# APPEAL OF THE HITE NATURAL GAS COMPANY.

FROM THE DECREE OF THE COURT OF COMMON PLEAS NO 2.
OF ALLEGHENY COUNTY, IN EQUITY.

Argued November 10, 1887—Decided January 3, 1888.

A natural gas company, organized as a limited partnership under the act of June 2, 1874, P. L. 271, in its certificate filed stated falsely that Hite, a subscriber for 850 shares, had paid in full by rights of way and other privileges for the company's line. Hite contracted with the company to furnish the right of way, the pipe for the line and to lay the latter, for a certain amount in cash and 850 shares of stock, and on the same day he contracted with a pipe company for the supply of the pipe to him to be paid by instalments alternately in cash and his notes, the latter to be secured by deposit of an equal amount in the stock of the gas company and of 200 additional shares when the contract was filled, and drew an order on the gas company to pay the pipe company in accordance with his contract with the latter, which order was accepted by the gas company subject to the terms of its own contract with Hite. When the pipe company had furnished the pipe according to its contract, it held Hite's notes for a large amount secured by a like amount of the stock. On application, the gas company refused to deliver the 200 additional shares, on the ground that Hite had failed in his contract with the latter and had received cash payments under said contract in excess of the amount he was entitled to. Hite was insolvent and the gas company was about to transfer its assets to another company composed of substantially the same persons. On a bill in equity filed by the pipe company against the gas company: Held,

1. That the plaintiff was entitled to a decree for an amount equal to the value of the stock withheld, as of the time when it should have been delivered, with interest thereon.

2. The stockholders of the gas company, having filed a statement which was false as to the subscriptions to its capital stock, were not entitled to the protection of a limited liability under the act of 1874, but were liable as general partners.

3. That the court properly exercised jurisdiction to grant a permanent injunction restraining the transfer of the gas company's assets, to decree a dissolution and appoint a receiver and to grant full relief.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 264 October Term 1887, Sup. Ct.; court below, No. 241 July Term 1886, C. P. No. 2, in equity.

On May 13, 1886, the American Tube and Iron Company, a corporation organized under the laws of Pennsylvania, filed a bill in equity against P. Y. Hite, Roswell P. Crafts and twenty-six others, partners, as the Hite Natural Gas Company, Limited, seeking to enforce liability of the defendants as general partners for the payment of a debt due the plaintiff, an injunction, a dissolution and the appointment of a receiver. On hearing, a preliminary injunction was awarded, and J. O. Brown appointed receiver until the further order of the court. On July 28, 1886, the answer was filed, and issue being joined, *Mr. R. H. Johnston,* was appointed examiner and master, who reported the following findings of fact and of law:

1. P. Y. Hite, Asa P. Wilson, Roswell P. Crafts [and others, naming them] became associated together as a limited partnership association, under the act passed June 2, 1874, and filed a statement as required by said act, on March 12, 1885, in the office of the recorder of deeds for Allegheny county, Pennsylvania, which is of record in Limited Partnership Book, vol. 4, page 112.

2. The averments contained in said statement in the following words, namely: "P. Y. Hite, being the subscriber for 850 shares of said stock, contributes in full payment of his subscription the right of way and privileges for laying an eight-inch line of pipe and maintaining the same, upon and over the lands and highways intervening between the Crist farm on Bull Creek, near Tarentum, in the county of Allegheny, state of Pennsylvania, to the Allegheny city line, a distance of twenty miles," was not true. The said P. Y. Hite did not have such "rights" and "privileges," and he never had obtained the same, and never did contribute them to the said partnership association.

3. The schedule of property contributed to the Hite Natural Gas Company is not such as is contemplated by the act of May 1, 1876, P. L. 89, in that it does not set forth the line of right of way, its conditions and the lands through which it was to pass; and the statement recorded for this reason does not comply with the statute authorizing the formation of limited partnerships: Maloney v. Bruce, 94 Pa. 249.

4. On March 12, 1885, the Hite Natural Gas Company entered into a contract with P. Y. Hite, in which it was cov-

enanted among other things, that the said P. Y. Hite should procure the right of way for an eight-inch line of pipe from the Crist farm in Fawn township, on Bull Creek, near Tarentum, Allegheny county, to the Allegheny city line, a distance of about 20 miles, and should lay a line of pipe, furnishing pipe and appurtenances, on or before June 1, 1885; and the Hite Natural Gas Company, Limited, in consideration of the covenants to be performed by the said Hite, agreed to pay said P. Y. Hite $150,000; namely: 850 shares of stock of the Hite Natural Gas Company, Limited, of the par value of $100 per share, and of a total value of $85,000, and also pay him the sum of $65,000 in cash, the said shares to be issued, and said cash to be paid to said P. Y. Hite or his order, as the work progressed, for all material furnished, or labor done, and for costs of rights of way secured, in proportion thereto; no payment to be made in advance, except at the discretion and option of the party of the first part; that is to say: $100 in cash, and one share of stock of the par value of $100 until the sum of $130,000 is paid, and the remaining shares amounting to $20,000, to be issued on the completion and the delivery of the line, rights of way and franchises, free of all liens and incumbrances thereon, and the acceptance thereof by the party of the first part. And it was a further consideration of the agreement, that for all shares of stock issued, and cash paid to the said P. Y. Hite, in payment of material furnished, the rights of way and franchises shall become the sole and entire property of the said Hite Natural Gas Company, Limited.

5. On the same day, to-wit: March 12, 1885, the American Tube and Iron Works, plaintiff in this proceeding, entered into a contract with P. Y. Hite, one of the defendants, to deliver him 20 miles of eight-inch pipe for the pipe-line in question, at stations of the West Penn. Railroad, shipments to commence on March 18, 1885, and continue at the rate of a half or three-quarters of a mile daily, barring accidents, until such contract was finished and completed. The price was to be 82 cents per lineal foot, payable as follows: When $5,000 worth of pipe had been shipped that amount was to be paid in cash, or by sight draft drawn upon the Hite Natural Gas Company, Limited, by order of the said P. Y. Hite. When the second $5,000 worth of pipe was shipped, it was to be paid by

the note of the said P. Y. Hite for that amount, at four months, six per cent. interest added, and so on, alternating, $5,000 in cash and $5,000 by four months' notes, with interest added, until the whole amount of the pipe had been furnished. Each of said notes given was to be secured by full paid certificates for 50 shares of the capital stock of the Hite Natural Gas Company, Limited, having a capital stock of $250,000, duly assigned to the said American Tube and Iron Works, when the pipe line was completed and accepted by the Hite Natural Gas Company, Limited. The said P. Y. Hite was assigned a sufficient number of the certificates of stock of the Hite Natural Gas Company, Limited, fully paid, to increase the security already held by the American Tube and Iron Works to $75,000.

On the same day P. Y. Hite gave the American Tube and Iron Works an order on Wm. H. Foote, treasurer of the Hite Natural Gas Company, Limited, directing the said natural gas company to pay to the American Tube and Iron Works, in accordance with the foregoing agreement, for pipes, as the bills of lading were furnished, namely : For the first $5,000 worth of pipe, $5,000 in cash; for the second $5,000 worth of pipe, $5,000 in certificates for 50 shares of stock in the natural gas company, issued in the name of P. Y. Hite, and by him assigned to the American Tube and Iron works, to be charged to P. Y. Hite; also on a final statement between the said natural gas company and P. Y. Hite, to be delivered to the said American Tube and Iron Works, certificates for 200 shares of stock, the same to be issued in the name of P. Y. Hite, and by him assigned to the American Tube and Iron Works. On the same day this order was accepted for the Hite Natural Gas Company, Limited, by Wm. H. Foote, treasurer, payable in accordance with the terms of the contract between the Hite Natural Gas Company, Limited, and P. Y. Hite. The order mentioned was signed by P. Y. Hite, and the acceptance thereof by W. H. Foote, treasurer. Both of the said parties were at the time managers of the Hite Natural Gas Company, Limited.

6. Under the arrangement above mentioned, the American Tube and Iron Works shipped pipe to the Hite Natural Gas Company, Limited, to the amount of $86,672.37, and the pipe

was received by the latter company and was used in the construction of the pipe line. On account of this claim, the Hite Natural Gas Company, Limited, paid in cash $43,079.14, and the sum of $226.58 was deducted from the bill. For the balance of the account, namely, $43,366.65, P. Y. Hite gave his notes of various dates, and as for security for these notes the Hite Natural Gas Company, Limited, issued stock which was delivered to the American Tube and Iron Works, to the amount of 430 shares, or $43,000. All of said notes made by P. Y. Hite, and for which said stock of the natural gas company was issued for security, are overdue and unpaid, and are held by the plaintiffs in the bill. The amount owing thereon is $43,366.65, with interest from Sept. 12, 1885.

7. The respondents never carried out the arrangement for the construction of the pipe-line in accordance with the contract herein set forth, but, without consulting the plaintiffs in the bill, carried the line across the river to Sharpsburg, and from that point constructed a line down on the Pittsburgh side of the river, using for the purpose the pipe furnished by the plaintiffs. This change in the agreement was made by P. Y. Hite and the Hite Natural Gas Company by an agreement in writing dated September 21, 1885. The failure to carry out the original contract was caused by their inability to obtain the rights of way which they had stated in the statement of the Hite Natural Gas Company, Limited, they already possessed. The plaintiffs in this bill were in no way responsible for the failure to complete the line according to the original agreement.

8. The Hite Natural Gas Company never issued or delivered to the American Tube and Iron Works the 200 shares of stock, which, according to the terms of their acceptance of the order of P. Y. Hite, they were to deliver to the plaintiffs upon the completion of the pipe line by Hite and its acceptance by the said natural gas company; but the said stock was by the said natural gas company, hypothecated to other parties for their own benefit, without the knowledge or consent of the plaintiffs. The plaintiffs have fulfilled their contract, and the contract between the Hite Natural Gas Company, Limited, and P. Y. Hite having been changed without the consent of the plaintiffs, they are entitled to 200 shares of stock of the

par value of $20,000, which were to have been delivered to them on the completion of the pipe line.

9. P. Y. Hite is insolvent, and the only assets of the Hite Natural Gas Company, Limited, which are of any considerable value, are the pipes which were furnished by the plaintiffs.

10. The false statement contained in the statement filed by the Hite Natural Gas Company, Limited, was material and tended to give to the said natural gas company a credit which it would not have otherwise had originally, and to induce persons to accept the stock of the said company as a security when they would not have done so had they known the facts and the position of the company, and the statement was fraudulently made.

11. That the respondents are liable as general partners, and that they are liable as individuals, and as a partnership doing business under the style of "The Hite Natural Gas Company, Limited," for the full amount of the plaintiffs' claim;— $43,666.65, with interest from September 12, 1885.

12. That the partnership has been dissolved, the interest of P. Y. Hite therein having been sold at sheriff's sale.

13. Prior to the filing of the bill in this case a corporation had been organized under the title of the Chicopee Natural Gas Company, composed substantially of the same parties who composed the Hite Natural Gas Company, Limited, with the exception of P. Y. Hite, and the capital stock of the corporation was the same in amount as the nominal capital of the limited partnership association. It was the purpose of the respondents to transfer the property of the Hite Natural Gas Company, Limited, to the Chicopee Natural Gas Company, notwithstanding the objection of the plaintiffs in these proceedings.

The master, therefore, recommended: (1) That the defendants be restrained by final injunction from selling, transferring, or disposing of any of the effects of the Hite Natural Gas Company, Limited. (2) That the partnership doing business as the Hite Natural Gas Company, Limited, be decreed to be dissolved. (3) That the defendants be decreed to pay the American Tube and Iron Works Company, plaintiffs, the sum of $43,666.65, with interest from September 12, 1885.

(4) That a receiver be appointed to take charge of the property and effects of the Hite Natural Gas Company, Limited, and that he convert the same into money, for the payment of the debts and distribution to and amongst the parties entitled thereto.

On the argument of various exceptions filed by the defendants to this report, the court, WHITE, J., sustained the exceptions so far as the report made the natural gas company liable to the plaintiff company for the entire indebtedness for the pipe furnished; ruling, however, that the plaintiff company was entitled to have the 200 shares of stock going to Hite, as the collateral on Hite's notes, and referring the cause back to the master to report the facts upon which a decree could be drawn in accordance with the views of the court.

The second report of the master was as follows:

The agreement in evidence of March 12, 1885, between plaintiff, P. Y. Hite and Hite Natural Gas Company, Limited, calls for the delivery of 200 shares of the stock of said defendants to the American Tube and Iron Company upon final settlement between Hite Natural Gas Company, Limited, and Hite. The evidence shows that before the completion of the line to the city of Pittsburgh, by agreement between Hite and other defendants, its course was changed so that the terminus was the city of Pittsburgh instead of Allegheny, and this without consulting plaintiffs and without their approval. The construction of the lines to the city of Allegheny has been wholly abandoned, as shown by all the evidence in the case. This departure from the contract was caused by the inability of defendants to obtain the right of way to the city of Allegheny, which right of way their partnership statement certified that they had, prior to the date of making the contract with the American Tube and Iron Company. The latter had a right to rely upon the recorded statement. There is no evidence in the case that the failure to obtain the right of way was made known to plaintiffs until they had delivered all of the pipe. The master therefore finds the plaintiffs had a right to rely on the recorded statement in making the contract with defendants, and the plaintiffs should not suffer because the defendants did not procure the right of way of which they certified they

had, and again, equity considers that which should have been done as having been done.

The evidence shows that all the pipe was delivered before September, 1885. In that month plaintiffs had a full settlement with Hite and there should have been a settlement between Hite and the other defendants long prior to the filing of this bill in May, 1886. By changing the course of the pipe line the defendants put it out of their power to settle according to the terms of the original contract.

In addition to this the evidence shows that defendants paid Hite large sums of money after they knew of his alleged default in the performance of his contract. The payments so made will exceed in amount the value of the balance of the two hundred shares of stock. The defendants, having knowingly paid out to Hite moneys which should have been retained to indemnify them against his default, if any there was, cannot avail themselves of the alleged default, to retain the two hundred shares of stock. The case is analogous to that of principal and surety. Having, by the payment of large sums of money to Hite, condoned his default, the defendants cannot set it up against the American Tube and Iron Company, to whom he stood in relation of principal debtor.

The master is of opinion that the stock should have been delivered in the month of September, 1885. It was not so delivered, but was hypothecated to the First National Bank of Chicopee, Mass., for their own debt and is still held by said bank. The stock is wholly out of defendants' power, and they did not deliver said stock when called upon by plaintiffs so to do, and are unable to deliver same to-day, and if they did, it would be practically worthless. The testimony of Craft shows that this unlawful conversion was made in the summer of 1885, at all events prior to September, 1885. His evidence also shows that in the summer of 1885, the stock was worth at least par. He testifies to one or more offers of $300,000 for the property of defendants, and there is nothing in the case to show that in September, 1885, the stock was worth less than par. In the absence of proof to the contrary, the presumption would be that the stock was worth the amount set forth in the recorded statement. The master finds that in September, 1885, the time said stock should have been de-

livered to plaintiffs, it was worth one hundred dollars per share, or the sum of twenty thousand dollars in all.

The plaintiffs are therefore entitled to a decree against defendants for said sum of twenty thousand dollars, with interest from October 1, 1885. Even if the stock should be tendered now, the plaintiffs would not be bound to accept it, in view of its depreciation.

When a debt is presently payable in the stock of a corporation, and the payee delays the payment for a long time, and until the stock becomes valueless, it is such a change of circumstances, existing at the time of the contract, as will, in equity, relieve the payee from accepting the stock in payment: Demarest v. McKee, et al., 2 Gr. 248.

On notice of the foregoing report, the defendants excepted to the findings of fact and conclusions of law because:

1. Plaintiffs had knowledge of the change of location of the pipe line and assented thereto.

2. The learned master misinterprets the recorded statement of the Hite Natural Gas Company, Limited, as to the procuring of right of way to Allegheny city.[2]

3. The change of the line, making its terminus at Pittsburgh instead of Allegheny city, was advantageous to plaintiffs and defendants alike, and did not, in any way, prejudice the plaintiffs.

4. The learned master should have found that the two hundred shares of stock were not delivered, not because the defendants were not able to deliver, but because, by the terms of the contract, and the default of P. Y. Hite, the defendant company was not legally liable or bound to deliver said stock to the plaintiffs.[3]

5. The learned master also errs in recommending a decree, against defendants, for $20,000, with interest. He should have recommended a decree in favor of defendants, dismissing the bill at plaintiff's cost.[4]

6. He also erred in not finding that the bill should be dismissed for want of equitable jurisdiction.[5]

These exceptions were overruled by the master, and on argument when filed with the report, the court, WHITE, J., filed the following opinion:

The contracts between the plaintiff company and P. Y. Hite, and P. Y. Hite and the Hite Natural Gas Co., and the order of Hite, accepted by the Hite company, all bear date, March 12, 1885, and, all relating to the same subject, must be construed together, substantially, as if one contract, signed by the three parties.

The tube and iron company agreed to furnish the pipe for the pipe line which Hite was to lay for the natural gas company, and to be paid therefor, one half cash, and one half notes of Hite, to be secured by a transfer of stock, for an equal amount of their par value, of the natural gas company, and on final settlement to receive 200 additional shares, as additional security.

Hite's contract was to lay 20 miles of pipe, including rights of way, etc., the estimated distance from the well to Allegheny city, for $150,000, $85,000 to be in stock of the company, and $65,000 in cash, with a proviso, that, if the actual distance was less than 20 miles, there was to be a pro rata deduction of stock and cash.

Hite failed to secure the rights of way to Allegheny city, and by an agreement, September 21, 1885, was allowed to cross the Allegheny river, and make connection with Pittsburgh, which made the actual distance only $17\frac{2}{10}$ miles. The plaintiff company, however, furnished pipe for 20 miles, which was delivered to the defendant company, and used by them.

During the progress of the work, and after its completion, the defendant company paid Hite, including stock and cash paid plaintiff company, $125,161.10, leaving a balance due Hite of $24,838, on the contract. Against this balance the defendant company claim a deduction for not laying 20 miles of pipe, and also, damages for not completing the line to Allegheny city, and contend that, on final settlement, Hite would owe them some $25,000.

They have not had a final settlement with Hite, but from their statement, exhibited to the master, this is their claim.

Whether the Hite Company, under their supplemental agreement of September 21, 1885, can claim damages for not completing the line to Allegheny city, is doubtful. But they are doubtless entitled, as against Hite, to a pro rata deduction for the distance short of 20 miles, unless they have in some

way compromised or forfeited this claim. But can they set up that claim against the plaintiff's demand for the 200 shares of stock?

By the statement, the natural gas company have paid on the contract to Hite, in cash, including the amounts paid plaintiff company on his order, $85,161.10, but have not given him any stock except the 400 shares delivered to plaintiff company on the order of March 12, 1885. They have overpaid him, in cash, $20,161.10, but still hold 450 shares of his stock.

Under the tripartite agreement of March 12, 1885, it was the duty of the defendant company to hold back 200 shares of stock for the plaintiff company. They were getting the benefit of the agreement between Hite and plaintiff company. They knew the plaintiff company were to receive this stock as collateral security for the payment of Hite's note. They had no right to deprive the plaintiff company of this security, by overpaying Hite, and then hold the stock to indemnify them for such over-payment.

Under the contract between plaintiff company and Hite, they were to furnish 20 miles of pipe at 82 cents per lineal foot; that would be $4,329.60 per mile, and $86,592 for 20 miles; to receive one half cash and one half notes of Hite, with that amount of stock as collateral. One half would be $43,296, or 430 shares of stock. Hite also agreed that when the line was completed and accepted by the defendant company he would assign enough stock more to make the security $75,000; that would require 320 more shares. But in the cotemporaneous order, accepted by the defendant company, only 200 shares were provided for. Presumably the company were unwilling to accept an order for more.

The order directed the defendant company to pay plaintiff company for the pipe as delivered, one half cash and one half stock, at par, and then, "also upon final settlement between said natural gas company and myself, deliver to said American Tube and Iron Company certificates for 200 shares of stock." This order was accepted by the defendant company, "payable in accordance with the terms of a contract of even date herewith, by and between the Hite Natural Gas Company, Limited, and Peter Y. Hite." The terms of the contract were $85,000 in stock and $65,000 cash, stock to be issued and cash

paid as the work progressed "for all materials furnished and labor done, and for costs of right of way secured, in proportion thereto; no payments to be made in advance, except at the discretion and option of" the defendant company. The contract also provided that whenever it should become apparent to the gas company that Hite, "from any cause whatever," should be unable to complete the line by June 1, 1885, they had the right, after seven days' notice, to take possession and complete the line themselves. Hite was also bound to give bond in the sum of $25,000, with three sureties, for the full and faithful performance of his agreement. The contract also provided that 200 shares of stock, $20,000, should not be issued until the completion and delivery of the line, free from all incumbrances, and its acceptance by the gas company. These provisions seemed to make the gas company perfectly safe against any failure of Hite, and also to give perfect assurance to the tube company that they would get all their collateral. The gas company had 850 shares of stock; could take possession and complete the line, if Hite was behind time, or "from any cause" was unable to complete it; held back 200 shares, and had a bond of $25,000, with three sureties, to meet any failure of Hite.

It is hardly a fair construction of the order to say that the 200 shares referred to in it are the 200 reserved in the contract. The order does not say so. They were especially reserved for the protection of the gas company. The tube company would want other stock. And the gas company seemed to have acted on that understanding, for they still hold over 400 shares, according to their statement.

But it is said a final settlement has not yet been made between the gas company and Hite. It ought to have been made long ago. According to their contract, they were not bound to accept the line until it was completed and free from all incumbrances. They did, however, accept it, and have been using it for two or three years. They cannot refuse the stock to plaintiff company, because they have delayed making a final settlement with Hite. If the gas company had enforced the provisions of their contract with Hite, I think there can be no doubt there would have been 200 shares of stock left for plaintiff company. By advancing to him over $20,000, in

cash, they have reduced the stock due him 200 shares. This may extinguish the 200 shares reserved in the contract. They still have, or ought to have, over 200 shares. . . . . .

Viewed, then, in any light, it seems to me that there would be a balance due to Hite, on final settlement, on the contract. But that balance is less than $20,000, the amount of 200 shares of stock claimed by the plaintiff company. We come back, then, to the question above suggested : Can the gas company, by advancing to Hite, in cash, more than $20,000 above the amount of cash he was to receive on the contract, and more than the par value of the 200 shares in controversy, set that off against this stock ? As we have said, and for the reasons stated, we think they cannot.

The remaining question, whether the case comes within the equitable jurisdiction of the court, is one we virtually passed upon in the earlier proceedings of the case. If the bill had been filed, simply for the purpose of getting the 200 shares of stock, or their value, it could not have been sustained, for there would have been a simple and adequate remedy at law. But the bill contains far more, and sets forth facts which give equitable jurisdiction. It is true the specific relief, now sought, was not asked for. But it is embraced in the general prayer for relief.

It is a familiar principle, which needs no citations of authorities, that when a court of equity has once acquired jurisdiction, it will dispose of every subject of contest involved in the controversy.

The fact that a common law action would lie is not sufficient, in all cases, to oust equity jurisdiction. "Jurisdiction in equity depends, not so much on the want of a common law remedy, as upon its inadequacy, and its exercise is a matter which often rests in the discretion of the court; in other words, the court may take upon itself to say whether the common law remedy is, under all the circumstances, and in view of the conduct of the parties, sufficient for the purposes of complete justice, or whether the intervention of chancery may not, for that purpose, be required and beneficially applied:" Bierbower's App., 107 Pa. 14. "The exercise of chancery powers must often depend on the sound discretion of

the court. . . . . So a bill may be sustained solely on the ground that it is the most convenient remedy: " Brush Electric Company's App., 114 Pa. 574.

It is also well established that, " Whenever a court of equity has jurisdiction, if the relief prayed for cannot, for some reason, be granted, a compensation in damages may be awarded in lieu thereof: " Masson's Appeal, 70 Pa. 29. " When a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes, and proceed to a final determination of all the matters at issue. For this reason, if the controversy contains any equitable feature, or requires any purely equitable relief, which would belong to the exclusive jurisdiction, or involves any matter pertaining to the concurrent jurisdiction, by means of which a court of equity would acquire, as it were, a partial cognizance of it, the court may go on to a complete adjudication, and may thus establish purely legal rights, and grant legal remedies which would otherwise be beyond the scope of its authority: " Pomeroy, Eq. J., §§ 181, 231, etc.; Adams's App., 113 Pa. 449.

Exceptions to master's supplementary report, overruled, and the same confirmed.

On October 22, 1887, the court signed a final decree:

1. That the defendants named forthwith pay to the plaintiff the sum of $22,450, with interest from October 1, 1885. 2. That the partnership heretofore existing between the defendants under the name of the Hite Natural Gas Company, Limited, be dissolved. 3. That the injunction granted, restraining the defendants from transferring and assigning their property, be made perpetual, and the receiver appointed provisionally be now appointed finally. 4. That the receiver forthwith wind up the said partnership, make sale of their property and distribute the proceeds, (1) to the costs of suit; (2) to the creditors of said defendants, including the defendant company; (3) to the persons and corporations holding stock in the proportions of their respective interests.[1]

Thereupon the defendants took this appeal, assigning inter alia that the court erred:

1. In entering said decree.[1]

2-5. In overruling defendants' exceptions.[2 to 5]

Arguments.

*Mr. A. M. Brown*, for the plaintiffs in error:

After a review of the evidence, contended:

1. The decree is erroneous, in that it was entered against all the defendants for damages—the par value of 200 shares of stock and interest from October 1, 1885. If the bill can be maintained, it must be on the ground that plaintiffs are entitled to specific performance, but it prays for neither specific performance nor damages. The decree deprived the defendants of the privilege of specific performance and adjudged an absolute payment of $22,450 and costs. It did more; dissolved the partnership, directed a sale of its property, and imposed the liability upon the individual members.

2. If the defendants converted the stock to their own use, or simply refused to deliver it upon demand, the plaintiffs had an adequate and complete remedy at law; wherefore, the court had not equity jurisdiction of the cause: Gallagher v. Railroad Co., 38 Pa. 102; Koch's App., 93 Pa. 434; no discovery was sought: P. & C. R. Co.'s App., 99 Pa. 177; Girard N. Bank's App., 13 W. N. 101; and the common law right of trial by jury is denied: Clark's App., 62 Pa. 447; Gray v. Railroad Co., 1 Gr. 412; Richards's App., 57 Pa. 105; Adams's Eq., 485; 2 Story, Eq., § 925; Tillmes v. Marsh, 67 Pa. 507; Norris's App., 64 Pa. 275; North Penn. Coal Co. v. Snowden, 42 Pa. 488.

3. The measure of damages for a breach of a contract to deliver stocks or chattels, is the amount in money with interest: Church v. Feterow, 2 P. & W. 301; Roberts v. Beatty, Idem 63; Fleming v. Potter, 7 W. 380; White v. Tompkins, 52 Pa. 363; Coffin v. Fulton, 3 Brewst. 73; Weiss v. Iron Co., 58 Pa. 295; but equity will not in any way enforce a contract where the relief sought is a payment of money, as in such case there is an adequate remedy at law: Kauffman's App., 55 Pa. 383; Sunb. & E. R. Co. v. Cooper, 33 Pa. 278.

*Mr. George Shiras, Jr.* (with him *Mr. C. C. Dickey*), for the defendants in error:

1. The most material part of the statement of the recorded organization of the defendant partnership, that Hite " contributes in full payment of his subscription " for 850 shares the right of way and privileges for laying an eight-inch line to

Allegheny city, was false and fraudulent. Moreover, the defendants were about to perpetrate another and greater fraud by transferring to themselves as the Chicopee N. G. Co. their entire assets, including the line of pipe furnished by the plaintiffs. This fraudulent act and purpose gave equity jurisdiction: Sloan v. Moore, 37 Pa. 217; Brush Elec. Light Co.'s App., 114 Pa. 574.

2. The master and the court below found the facts in favor of the plaintiff company, and the only remaining question is, did the court err in granting complete and final relief? The court must often take upon itself to say whether the common law remedy, under the circumstances and in view of the conduct of the parties, is sufficient for the purpose of complete justice: Bierbower's App., 107 Pa. 14; Brush Elec. Light's App. 114 Pa. 574. And when equity has once obtained jurisdiction, it may go on to a complete adjudication, and thereby establish legal rights and afford legal remedies, otherwise beyond the scope of its authority: Pom., Eq. J., §§ 181, 231; Story Eq. J., §§ 717, 719, 724, 729; Beasley v. Allyn, 12 W. N. 90; Palmer v. Graham, 1 Pars. 479. While it is true that a manifest want of jurisdiction in equity may be taken advantage of at any stage of the case, the court will not permit an objection to prevail in doubtful cases after the parties have voluntarily proceeded to a hearing upon the merits: Adams's App., 113 Pa. 449.

3. Where a debt is payable in stock, and payment is delayed until the stock becomes valueless, it is such a change of the circumstances existing at the time of the contract as in equity will relieve the payee from accepting the stock in payment: Demarest v. McKee, 2 Gr. 248.

OPINION, MR. JUSTICE WILLIAMS:

The Hite Natural Gas Company, Limited, was organized under the provisions of the act of June 2, 1874, with a capital of $250,000, divided into twenty-five hundred shares of one hundred dollars each. The business contemplated was the production of natural gas from wells near Tarentum, and its transportation to the city of Allegheny for sale as a fuel. The company contracted with P. Y. Hite, one of its members, to furnish the right of way for its line, the pipe and other mate-

rials necessary for its construction, and to lay and complete the pipe line to Allegheny, a distance of about twenty miles, for $150,000. This sum was to be made up of cash $65,000, and stock of the P. Y. Hite Natural Gas Company $85,000. Hite then contracted with the American Tube and Iron Company, the plaintiffs below, for the pipe, agreeing to pay for the same in sums of $5,000 each. The first payment to be made in cash; the next, in Hite's note at four months with $5,000 of the stock of the company as collateral security therefor; and so on alternately until the whole quantity was delivered, paid for in this manner. Hite was then to deliver $20,000 more of the stock as an additional security for the payment of his notes. Hite then drew an order upon the gas company requesting it to pay the tube and iron company for the pipe as it was delivered, in accordance with the terms of his agreement. The gas company accepted this order subject to the provisions of its own contract with Hite. The tube and iron company then proceeded to deliver the pipe and were paid therefor in accordance with the agreement, one half in cash and one half in Hite's notes with the stock of the company as collateral. When the pipe was all delivered the tube and iron company held Hite's notes for about $43,000, and a like amount of stock in pledge for their payment. As a further security for the payment of these notes they applied for the $20,000 additional stock provided for in the agreement with Hite. This the gas company refused to furnish, giving as reasons for their refusal the fact that they had made advances in cash to Hite in excess of the $65,000 cash provided for in their contract so that the stock was not due him, and the failure of Hite to procure the right of way, in consequence of which the company had been compelled to change its terminus and incur expenses and loss.

The first question, therefore, is whether the plaintiffs below had a just claim against the appellant for the value of the stock withheld by it. Hite had contracted to deliver it to the tube and iron company, and the gas company had undertaken to make the delivery for him subject to its contract with him for the construction of the pipe line. The tube and iron company had a right to insist upon its delivery, unless there was some valid reason set up as an excuse for its non-delivery.

The findings of the master upon the questions of fact involved are against the gas company. The advances to Hite which it sets up, were made as he finds in excess of the contract obligations to him and in fraud of the rights of the tube and iron company. The change of terminus was made by the action of the company. The failure of Hite to procure the right of way ought not to be heard in the face of the fact that the certificate, signed by the stockholders and placed on file for the information of all persons dealing with the company, contained an express statement that the right of way had been obtained and received in payment of Hite's subscription for eight hundred and fifty shares of the stock at $85,000. From these findings the master held that the tube and iron company had a valid demand against the gas company for its refusal to deliver the stock and recommended a decree in its favor for the entire amount due upon Hite's notes. The court below concurred in the findings of fact, but made a decree for the payment of the value of the stock withheld and not for the general balance due from Hite. From a careful examination of the evidence we think the facts are correctly found; and the decree of the court is clearly justified by them.

Our next question relates to the extent of the liability of the defendants. They claim to be regularly organized under the act of 1874, and to have no liability beyond that which attaches to the Hite Natural Gas Company, Limited. The plaintiffs below insist that the members of this company are liable as partners. On turning to the certificate of the stockholders, filed under act of 1874, we find it clearly stated that the subscription of $85,000 for eight hundred and fifty shares subscribed for by P. Y. Hite is paid for in property, viz.: "the right of way and privileges for laying and maintaining an eight-inch pipe line upon and over the lands and highways intervening" between the wells and the city of Allegheny. This was false. The answer of the defendants in this case fully justifies the finding of the master, that Hite did not have, and was unable to procure, the right of way and that the change of terminus was made necessary by this fact. This was calculated to give a false credit to the company. It had no right of entry by virtue of a grant of eminent domain, but was compelled to procure by private contract with each individual and each pri-

vate or municipal corporation whose lands were crossed by their line, a grant of the right of way. If this was already done and the right of way paid for in full, the success of the enterprise seemed assured. If not done, the difficulty of securing the right of way for a line of such length through a populous region by purchase, would be regarded as very great and as making the enterprise an extremely hazardous one. To all persons interested in knowing the fact, the statement in the certificate was misleading and false. It was not ignorantly false; but it was made by those who knew, at least who could have known and were bound to know, that it was not true. Under such circumstances the master was right in his legal conclusion that as to creditors the stockholders in the Hite Natural Gas Company are general partners and liable as such. They have not fully and fairly complied with the requirements of the act of 1874, because they certified to the payment of $85,000 for stock that was not paid, and to the possession of property received in payment of subscriptions that was not received and has never been received. For this reason they are not entitled to the protection of the act.

But it is also urged that it was error to direct an injunction in this case. The facts found by the master on which this question depends are as follows: The enterprise of the Hite Natural Gas Company has proved a failure. Its wells have become practically worthless. Its stock is now worthless. The company is insolvent and its only valuable property is the pipe in its line. Most of its members have united in organizing a new company, called the Chicopee Gas Company, to which the old company is about to transfer its pipe line, thus placing its property beyond reach of its creditors. These findings which were concurred in by the court below, and which seem to be well supported by the evidence, made a sufficient foundation for the injunction awarded and for the appointment of a receiver.

On an examination of the whole case we are satisfied with the decree of the court below, and it is accordingly affirmed.

Appeal dismissed at the costs of the appellants.