of a sum of money, is another and a different question, the determination of which must not be confused with that of the note in suit. If the money belongs to Mrs. Heydt because it was advanced to her, she can doubtless assert her claim to it in some appropriate form and proceeding, but the consideration of that question is quite aside from the present contention. We are of opinion that the offer of testimony on the part of the defendant was properly rejected, and therefore—

The judgment is affirmed.

---

## Hill, Keiser, & Company, Limited, Plffs. in Err., *v.* S. N. Stetler et al.

On the organization of a limited partnership, under the act of June 2, 1874, and its supplements, the statement should show where and in what amounts the subscriptions are to be paid, and the subscription-list book should thereafter show the payment or the failure to pay the instalments falling due after recording the statement.

Where persons seek the benefits of the act they must take them on the terms which the act prescribes.

Failure to comply with the terms of the act renders the members liable as general partners.

A statement in which the capital is mentioned as payable "on the execution thereof," executed and recorded without any payment, coupled with a failure to keep the subscription-list book, is not a compliance with the terms of the act.

A subsequent purchaser of shares who pays the purchase money to the treasurer is thereby affected with notice that the capital has not been paid in, and is also liable as a general partner.

(Argued February 23, 1888. Decided April 2, 1888.)

---

NOTE.—For an elaborate discussion of the requirements of the New York statute on this subject, see Manhattan Co. v. Laimbeer, 108 N. Y. 578, 15 N. E. 712, in which a majority of the New York court of appeals hold that acts providing for the formation of limited partnerships should receive a reasonable construction, and that individuals who attempt to form such a partnership are to be held liable for noncompliance with the statute only upon a failure on their part to do some act which they or some one of them is required by the statute to perform, and not upon failure of a public officer to do an act which the statute provides that he shall do, as, to record the certificate of formation after it has been duly filed with him. See also Pears v. Barnes, 1 Sad. Rep. 165.

January Term, 1888, No. 58, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and WILLIAMS, JJ. Error to the Common Pleas of Lackawanna County to review a judgment of compulsory nonsuit in an action of assumpsit, October term, 1885, No. 212. Reversed.

This was an action by Hill, Keiser, & Company, Limited, against S. N. Stetler, E. L. Fuller, R. W. Archbald, and Theodore Strong, copartners, doing business as the Amity Coal Company, Limited.

The facts are stated in the opinion.

The assignments of error specified the action of the court: (1) In granting the nonsuit; and (2) in refusing to take it off.

*Edward N. Willard, Frederick W. Gunster,* and *Everett Warren,* for plaintiffs in error.—On a motion for nonsuit, the truth of the evidence offered by plaintiffs is conceded, as also every presumption and inference that can, legitimately, be drawn therefrom.

There was an utter and complete disregard of the plain provisions of the limited partnership acts by defendants.

If parties seek to have all the advantages of a partnership, and yet limit their liability as to creditors, they must comply strictly with the act. Maloney v. Bruce, 94 Pa. 252.

This principle applies to limited partnerships under the act of 1836, and its supplements (Andrews v. Schott, 10 Pa. 47; Richardson v. Hogg, 38 Pa. 153; Vandike v. Rosskam, 67 Pa. 330; Guillou v. Peterson, 89 Pa. 163; Metropolitan Nat. Bank v. Gruber, 14 W. N. C. 12; Conrow v. Gravenstine, 1 Sad. Rep. 480); and equally to limited copartnerships under the act of 1874, and its supplements; (Maloney v. Bruce, 94 Pa. 252; Bement v. Philadelphia Impact Brick Mach. Co. 5 W. N. C. 58; Keystone Boot & Shoe Co. v. Schoellkopf, 11 W. N. C. 132; Pears v. Barnes, 1 Sad. Rep. 165; Eliot v. Himrod, 108 Pa. 569; Hite Natural Gas Co.'s Appeal, 118 Pa. 436, 12 Atl. 267).

Limited partnership acts are construed in the same way all over the Union. Haviland v. Chace, 39 Barb. 285; Argall v. Smith, 3 Denio, 435.

It is at the peril of all the partners that the provisions are not complied with. Hubbard v. Morgan, cited in 3 Kent, Com. 36, note; Bowen v. Argall, 24 Wend. 496; Madison County Bank

v. Gould, 5 Hill, 311; Ward v. Newell, 42 Barb. 482; *Re* Merrill, 12 Blatchf. 221, Fed. Cas. No. 9,467; Pierce v. Bryant, 5 Allen, 91; and Lancaster v. Choate, 5 Allen, 530; Snyder v. Leland, 127 Mass. 291; Beers v. Reynolds, 11 N. Y. 97; Van Riper v. Poppenhausen, 43 N. Y. 68; Levy v. Lock, 5 Daly, 46; Van Ingen v. Whitman, 62 N. Y. 513; Johnson v. McDonald, 2 Abb. Pr. 290; Henkel v. Heyman, 91 Ill. 96; Durant v. Abendorth, 69 N. Y. 148, 25 Am. Rep. 158; Bulkley v. Marks, 15 Abb. Pr. 454; Hogg v. Ellis, 8 How. Pr. 473. See also 1 Lindley, Partn. 526.

Fuller, Archbald, Stetler, and Strong were general partners, doing business as the Amity Coal Company, Limited.

*W. H. Jessup* and *E. B. Sturges,* for defendants in error.—An obligation "payable upon the execution thereof" is one making the debt due immediately after the same is signed and delivered.

Webster defines "payable" as follows: "capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable."

It simply means that the amount is presently due from the subscriber after he has affixed his name thereto.

The statement, when filed, made a valid legal organization, and for all debts contracted by the organization, it alone could be sued.

This is especially provided for in the 2d section of the act, under which the only remedy is by suit against the association, and, after judgment and execution returned *nulla bona,* then by rule upon the defaulting stockholder, to show cause why execution should not issue against him for the amount unpaid upon his subscription. Lauder v. Tillia, 117 Pa. 304, 11 Atl. 86.

Where a person deals with a limited partnership and then sues the members as general partners, the burden is on him to prove that they are general, or to show such facts as would make them general partners. Whildin v. Bullock, 4 W. N. C. 234.

Opinion by Mr. Justice Williams:

The defendants are sued as partners. They claim the immunity from liability as individuals which the act of 1874 confers on persons associating themselves in a joint stock or limited partnership association, alleging that they have fully complied with

its provisions. This is the question upon which the plaintiffs' right to recover depends. The court below held that the organization of the "Amity Coal Company, Limited," had been in full compliance with the provisions of the statute, and that the only remedy of the plaintiffs was by action against the association and then against the stockholders severally for the amount unpaid upon their stock subscriptions. A compulsory nonsuit was accordingly entered against the plaintiffs, which the court declined to take off; and this action of the court is the error assigned.

The act of 1874 provides that when persons "desire to form a partnership association for the purpose of conducting any lawful business . . . by subscribing and contributing capital thereto, which capital shall alone be liable for the debts of such association," they shall make and subscribe to a statement in writing, in which they shall set forth, among other things, the full names of the persons so associating themselves together; "the amount of capital of said association subscribed for by each; the total amount of capital, and when and how to be paid."

In section 2 it is provided that the members of the association shall not be individually liable for any debt of the association until the joint property has first been exhausted, and then only to the extent to which they may be indebted upon their subscriptions to the capital stock. To the end that the subscribers may be protected and their liability kept within the prescribed limits, no execution can issue against them until an order has been made by the court in which the judgment is entered, or by a law judge thereof, on notice to the person to be affected, and after a full hearing fixing the amount due upon his subscription and awarding the writ.

In order that this question may be disposed of correctly, the act requires every such association to keep a "subscription-list book" that may be produced in court, and that should be "open to inspection by the creditors and members of the association at all reasonable times."

The Amity Coal Company, Limited, was organized by three persons, *viz.*: Stetler, Fuller, and Archbald, who subscribed to and acknowledged the statement in due form. This statement set out the following facts, for the information of the public: "The amount of the capital stock of said association is $25,000, payable in lawful money on the execution hereof."

The persons subscribing to the stock and the amount sub-

scribed by each were stated as follows: "The said Samuel N. Stetler subscribes for $8,000, and said Robert W. Archbald subscribes for $9,000." The business to be done by the association is stated to be "the owning and leasing of mines and coal lands and the mining, preparing, shipping, buying, and marketing of anthracite coal, together with all matters incident thereto."

This statement followed the act of assembly, and as to its form was entirely regular, but the proofs show that not one dollar was paid by either of the subscribers to the stock. It was nevertheless recorded and the "Amity Coal Company, Limited," entered upon its business career without a farthing in its treasury or an article of property in the world.

This was not a compliance in good faith with the requirements of the act of 1874. The purpose of that act was to foster legitimate and honest undertakings, where capital was "subscribed and contributed" by persons desiring to engage in business, and not to bring into life a brood of associations without capital, without a treasury, and possibly without a solvent subscriber. But this association was not merely an empty shell, for its statement was misleading and deceptive. It provided for a capital of $25,000, which was made payable on the execution of the statement. It was subscribed and acknowledged and then regularly recorded, without the payment of a dollar of the subscribed capital.

The only source of information, besides the statement, which the law provides for is the "subscription-list book" which all such associations are required to keep, but which this one never opened. The fair import of the language of the statement that the subscribed capital was payable "on the execution hereof" is that it was to be paid down; and the subsequent recording of the statement is an assertion that the subscribers have performed their promise and paid their subscriptions into the treasury. To enter upon business with the credit which the possession of a paid-up capital of $25,000 would give the association, when in fact nothing had been paid either in money or property, was an evasion of the law and a fraud upon the public.

In saying this we do not impute an intention to defraud, or reflect upon the motives of the gentlemen by whom the Amity Coal Company was organized. They may have supposed themselves to be complying with the provisions of the act. Our business is not with their motives, but with what they did; and our inquiry

is whether this association was organized in accordance with the fair interpretation of the act of 1874. The act provides for the protection from personal liability of those who "subscribe and contribute" a capital to be employed in any lawful business. The "capital" is staked upon the success of the business, but because the amount of the capital appears upon the statement on record and the "subscription-list book" on the desk of the association, all who have occasion to deal with it may know the amount of actual capital within reach and determine to what extent the association is entitled to credit. But persons who subscribe yet never contribute, and who by failing to keep a "subscription-list book" withhold from the public all means of knowing the truth, cannot be within the protection of the act. They really put nothing into the enterprise except the credit of a capital that is actually withheld. They mislead the public and induce confidence to which they are not entitled. In other words the credit they obtain rests, not upon a subscribed and contributed capital, but upon a fraudulent appearance of such capital in their statement. We do not hold it necessary to a valid organization that the entire subscribed capital should be paid into the treasury before an association can begin business. The act of 1874 contemplates the possibility of unpaid balances and provides a method by which creditors may reach them; but we do hold that an association has no right to enter upon business until some part of the subscribed capital has been actually paid. The statement should show where and in what amounts the subscriptions are to be paid; and the "subscription-list book" should thereafter show the payment or the failure to pay the instalments falling due after the recording of the statement, so that members and creditors may see at any time the exact situation of the association. These are the terms upon which the statute promises individual immunity from the debts of the concern, and they must be complied with fairly and honestly. Where persons seek the benefits of an act of assembly they must take them upon the terms which the act prescribes or not at all.

In Maloney v. Bruce, 94 Pa. 252, PAXSON, J., said: "If parties seek to have all the advantages of a partnership, and yet limit their liability as to creditors, they must comply strictly with the act."

Under the limited partnership act of 1836 the same rule was repeatedly held. Richardson v. Hogg, 38 Pa. 153; Guillou v. Peterson, 89 Pa. 163.

The recent case of Hite Natural Gas Co.'s Appeal, 118 Pa. 436, 12 Atl. 267, is very nearly in point. In the recorded statement Hite's subscription for $85,000 of the capital stock was stated to be paid by the transfer to the company of the right of way for the pipe line, etc., when in fact the right of way had not been procured. This was a false statement as to a material fact affecting the capital of the company; and it was held that it rendered the subscribers liable to creditors as partners.

But it is urged that Mr. Strong, who was not a subscriber to the stock, paid fully and fairly for the interest which he subsequently bought in the association, and that he ought not to be held liable for the misrepresentations of the original subscribers. The organization took place on June 18, 1883. On the 17th of November following, Mr. Strong purchased ten shares and paid $1,000, their par value, into the treasury. He did not purchase from one of the subscribers who held the entire stock and pay to him for his shares but he paid to the treasurer. He had notice, therefore, that the stock then issued to him had never been paid for. If he had made inquiry as he was bound to do, into the manner in which the association had been organized, and whether the act of 1874 had been complied with in good faith, he would have learned the facts; and he is chargeable with notice of all that such an inquiry would have disclosed. He then had notice in law, if not in fact, that not one dollar had ever been paid by the subscribers, either at the execution of the statement or at any intermediate date, and that the association was without money or property with which to conduct business or pay its liabilities. With this notice he purchased an interest in the association and subsequently became one of its managers.

It is not easy to see upon what principle he can be said to stand on better ground than his associates. He bought into an association organized in disregard of the act of 1874, doing business without a capital and as a matter of speculative adventure. It was an empty shell, a sham; and Mr. Strong's position is the same as if he had bought into any other insolvent firm. He did not become liable for debts contracted before he became a member, but for debts contracted afterwards he and his associates are liable as partners. Mr. Strong's honest payment for his interest cannot cure the vice which infected this association from its organization or relieve him from the legal-consequences of his connection with an insolvent firm.

Judgment reversed and *venire facias de novo* awarded.