## H. B. COCK· v. J. M. BAILEY ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 27, 1891—Decided January 4, 1892.

[To be reported.]

1. If the members of a limited partnership seek to shelter themselves
from personal liability behind the act of June 2, 1874, P. L. 271, and
its supplements, they must show a substantial compliance with the
terms thereof. Where they fail utterly to comply with the essential
features, as in Maloney v. Bruce, 94 Pa. 249, and Hill v. Stetler, 127
Pa. 145, they must be held to the liability of general partners.

2. It was never intended, however, that these acts should be used as a
trap to catch persons who have honestly complied with the substantial
requirements thereof, and to impale them upon a meaningless techni-
cality; and, where there has been a substantial compliance with the
statutes, in the formation of the association, the members are not liable
as general partners: Per Mr. Chief Justice PAXSON.

(*a*) The act of May 1, 1876, P. L. 89, supplementary to the act of June 2,
1874, allows contributions to the capital of limited-partnership associa-
tions to be made "in real or personal estate, mines or other property,
at a valuation to be approved by all the members," a schedule contain-
ing "a description and valuation of the property so contributed," to be
inserted in the articles of association:

3. The object of the provision for a description and valuation of the pro-
perty being to enable creditors to ascertain precisely of what it consists
and to judge of its value, the main point is the description, which must
be sufficiently accurate to identify; the valuation the company may fix
to suit itself, and that it may be excessive is immaterial. Nor need
each piece of property be valued separately.

4. When the schedules contain a full description by location, metes and
bounds, and area, of each piece of real estate contributed, and a state-
ment of the undivided interest therein contributed by each member,
with a valuation of the total contribution so made by each, and a valua-
tion of all the lands as a whole, the requirements of the act of 1876 are
substantially complied with.

5. The act of 1876 does not limit the real property it allows to be con-
tributed, to lands lying in this state, to lands held by legal title, or to
lands unencumbered by liens. While land that is beyond the reach of
creditors may not be within the contemplation of the statute, land lying
in an adjoining state is not beyond reach, and may be the subject of
such a contribution.

6. That some of the lands described were encumbered, is immaterial; at

least when notice of that fact was given in the articles. Nor does it matter that the title of the subscribers to one of the properties specified as contributed, consisted only of a contract to purchase on which nothing had been paid, an accident having delayed performance which was carried out a few months afterwards, though these facts were not mentioned.

7. When the holders of bonds, to secure which the property of a limited partnership association was mortgaged, purchased the mortgaged premises subject to the lien of the mortgage, having it conveyed for their benefit to a trustee designated by them, the bonds became a part of the purchase money, and the liability of the company mortgagor to pay them became extinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 19 October Term 1891, Sup. Ct.; court below, No. 838 June Term 1889, C. P. No. 1.

To the first Monday of June, 1889, H. B. Cock brought assumpsit against " James M. Bailey, Thomas Fawcett, Samuel S. Brown and James L. Marshall, who survive Hugh Lee, deceased, late partners doing business under the name and style of the Keystone Coal Company, Limited," upon certain bonds of the Keystone Coal Co., Limited, and certain interest coupons thereto attached. Issue.

At the trial on November 18, 1890, the following facts were shown:

On February 17, 1879, the defendants, with Hugh Lee, executed and acknowledged articles of association for the purpose of forming the Keystone Coal Co., Limited, as a partnership association composed of themselves and organized under the act of June 2, 1874, P. L. 271, and its supplements; the business for which it was formed being the buying and selling of coal lands, the mining, selling and shipping of coal, etc., the same to be conducted within the county of Washington, and the principal place of business to be at Hanlin station in said county. These articles of association were recorded in Washington county on October 1, 1879, and in Brooke county, West Virginia, on April 12, 1880. The capital of the association was therein stated to be five hundred thousand dollars, subscribed as follows: James M. Bailey one hundred thousand dollars; Hugh Lee three hundred and seventy thousand dollars; and Thomas

Fawcett, Samuel S. Brown and James L. Marshall, ten thousand dollars each. It was set forth, further, that each of said subscriptions was to be paid by the transfer to said association of "real estate, coal property, coal rights and privileges, leases, etc.," owned by the subscribers, described in schedules A, B and C, made a part of the articles of association. The aggregate value of the properties described in said schedules, was stated at five hundred thousand dollars; and the respective undivided interests therein owned and controlled by each of the subscribers were specified, together with the valuations at which said interests were contributed by them to the association, but the individual tracts and properties described were not valued separately.*

The following stipulations for the conveyance of said properties were also set out:

"13. All of said lands, coal properties, coal privileges and leases being in the names of James M. Bailey and Hugh Lee, or James M. Bailey or Hugh Lee, said parties agree to convey to said association said lands, properties, privileges and leases, by deeds with covenants of general warranty, upon the signing and executing of these articles of association, subject, however, to such liens as may be against the same; but, for the protection of said association, a sufficient amount of the stock issued to said contributing members in payment for the same, is to be retained by said association at the par value of the same from said contributing stockholders, in proportion to the amount of the liens upon that proportion of the said lands, coal lands and coal privileges, contributed by each one for the payment of said liens."

No statement of the nature or amount of the liens thus referred to, was made.

Schedules A and B described, by metes and bounds and area, certain tracts of land and coal in Washington county, Penn-

---

* That is to say, schedules A, B, C, each described at great length by metes and bounds, and areas, several tracts of coal land, etc., and the undivided interests of the subscribers therein as tenants in common; and these schedules were followed by a "continuation of statement" which set forth that each subscriber, being the owner of a certain interest in the coal land and coal privileges as described in schedules referred to, "contributed his interest in the same at one hundred thousand dollars to said association," as the instance might be.

sylvania, and Brooke county, West Virginia. Schedule C specified a " lease of land and water privilege " assigned by Hugh Lee to the Keystone Coal Co., Limited, describing it by giving the names of the parties, the date, the place of record in Brooke county, West Virginia, and the term; and also a " lease of coal, coal rights and lands, underlying certain lands in Jefferson township, Washington county, in the state of Pennsylvania, as described, mentioned, and set out in a certain article of agreement between James Stewart and James M. Bailey, dated June 12, A. D. 1877," assigned by said James M. Bailey to the Keystone Coal Co., Limited.

Among the properties described in schedule B was a tract in Brooke county, W. Va., fronting on the Ohio river, purchased from Judge Mellon of Pittsburgh in the name of Hugh Lee, the use for which it was intended being, as appeared from the testimony, the loading of coal on boats for shipment down the river. At the date of the articles of association, Judge Mellon had not yet conveyed this property to Lee, and no purchase money had been paid to him for it. He had entered into a contract to convey it on a date anterior to April 1, 1879, the purchase money to be paid to him on delivery of the deed; but, on account of his having lost his own title papers, the making of the deed was delayed, and it was not delivered until October, 1879, or perhaps later. A purchase money mortgage was then placed on the property, which was not paid off until some time in 1881.

On April 1, 1879, the Keystone Coal Co., Limited, executed a mortgage to a trustee to secure an issue of bonds amounting to two hundred and seventy-five thousand dollars, of which the bonds sued on by the plaintiff were a part. The mortgage was not printed in the paper-books. The date of its delivery and the dates of actually issuing the bonds were not shown. The bonds were made payable to the Safe Deposit Company of Pittsburgh, trustee, or bearer, on April 1, 1887, and were signed for the Keystone Coal Co., Limited, by Samuel S. Brown as chairman, and J. L. Marshall as secretary. They were sealed with the seal of the Keystone Coal Co., Limited. The interest coupons were payable to bearer, and signed by Thomas Fawcett, treasurer. The plaintiff became the holder of the bonds in suit, for value, before maturity.

Statement of Facts.

The plaintiff having rested, defendants made the following offer :

Counsel for defendants offer to prove that the Keystone Coal Co., Limited, becoming unable to pay its debts as they matured, in the year 1883 elected liquidating trustees, for the purpose of closing out and settling its affairs and going into liquidation; and accordingly proceedings were had to further said litigation in the Court of Common Pleas of Washington county, Pennsylvania, at No. 163 June Term 1883; that, among said proceedings was an order of the said Court of Common Pleas directing the trustees to sell all the real estate owned by the Keystone Coal Co., Limited, subject to the lien securing the payment of the bonds in suit, as well as the other bonds which are referred to in the bonds in suit; that said sale was accordingly held, and at the said sale James M. Bailey, one of the defendants, at the request of certain of the bondholders, purchased said property subject to the payment of the said lien securing said bonds, for the benefit of the bondholders, including the bonds in suit; that, subsequently, the bondholders, including the plaintiff in this case, met and approved the said purchase, so made by the said James M. Bailey as trustee for them, and signed different agreements in reference thereto, among which is an agreement dated Pittsburgh, April 25, 1887, marked exhibit No. 3, and another agreement, dated Pittsburgh, April 25, 1887, marked exhibit No. 4, by which the said bondholders agreed to contribute certain percentages of money for the payment of expenses connected with the said purchase, and appointed James M. Bailey, and with him Joshua Rhodes, to act as trustees for them; that the said H. B. Cock signed each of the said papers ; that, subsequently thereto, the said James M. Bailey made a formal declaration of trust in writing signed by him, which declaration of trust is offered herewith and marked exhibit No. 5 ; and that the said property purchased by him at the trustee's sale, and for which a deed was made to him by the trustee subject to the payment of the said lien securing the payment of all the said bonds, is still held by him as trustee for the bondholders.

Exhibits Nos. 3 and 4 mentioned in the above offer, were in precisely the same form except as to the amount of the contributions therein provided for.   Exhibit No. 4, signed by a number of bondholders including the plaintiff was as follows :

" We, the undersigned bondholders of the Keystone Coal Co., Limited, hereby agree to contribute to the payment of the taxes and expenses, including the year 1887, as per statement and circular letter of April 16, 1887, of the same by Joshua Rhodes, chairman, pro rata, on the amount of the bonds held by us severally. And we hereby appoint Joshua Rhodes and James M. Bailey to act as trustees for us, to collect said pro rata contribution and pay out the same, and to acquire and hold the title to the estate of the late Keystone Coal Co., Limited, for us as trustees, and hereby confirm their acts as said trustees.

" PITTSBURGH, April 25, 1887."

The offer was objected to for the following reasons: (1) That it is incompetent and irrelevant. (2) That it contains no offer to prove that the plaintiff had notice or knowledge of the defects and false statements contained in the articles of association, making the defendants' individually liable. (3) The offer to prove that the purchase, subject to the lien, of the coal property, was at the request of certain of the bondholders, does not contain an offer to prove that the plaintiff was one of. these bondholders. (4) That any acquiescence on the part of the plaintiff in such purchase, made subsequent to the purchase, would not affect his rights as against the individual members of the company. (5) The papers mentioned in the offer, dated April 25, 1887, show no evidence of any concurrence in the purchase made by James M. Bailey, nor do they tend to prove any release of the individual partners by the plaintiff for his claims here sued upon. (6) The offer shows title in one of the defendants, and also shows that the plaintiff, in any event, has only an interest in the property purchased, if any, as security for his debt. (7) The defendants being individually liable under their articles of association, held the land as between themselves, and as between themselves and their creditors, as tenants in common, and could not convey a title by a sale through liquidating trustees. (8) That under no circumstances could the liquidating trustees pass any title to the property of the Keystone Coal Co., as part of this property is shown to be in the state of West Virginia. (9) That there is no offer to prove that the deed of trust alleged to be made by James M. Bailey was ever delivered or accepted by any of the bondholders.

Charge of Court below.

By the court: Objections sustained; exception.[3]

The testimony being then closed, the court, COLLIER, J., charged the jury in part as follows:

Plaintiff's counsel request the court to instruct the jury:

1. That, under all the evidence, the verdict should be for plaintiff.

Answer: Affirmed.[1]

Counsel for defendants ask the court to charge the jury as follows:

1. Under all the evidence, the plaintiff cannot recover.

Answer: Refused.[2]

2. There can be no recovery in this case against either James M. Bailey or Samuel S. Brown, two of the defendants.

Answer: Refused.[4]

3. The bonds in evidence being under seal, and there being no evidence to show that James M. Bailey, one of the defendants, authorized said seal to be affixed to said bonds, or that said bonds should be issued under said seal, their verdict must be for defendants.

Answer: Refused.[5]

4. Under the bonds in evidence, the plaintiff cannot maintain an action in his own name as plaintiff.

Answer: Refused.[6]

5. This being an action in form ex contractu, the plaintiff cannot recover unless he has proved a joint liability on part of all defendants.

Answer: The plaintiff has shown a joint liability.[7]

6. Under the records and evidence in this case, there was no personal liability on part of defendants, as members of the Keystone Coal Co., Limited, to pay the bonds in suit.

Answer: Refused.[8]

—The jury returned a verdict for the plaintiff for $16,369.93, and judgment was entered thereon; whereupon, the defendants took this appeal, assigning for error:

1. The affirmance of plaintiff's point.[1]

2. The answer to defendants' point.[2]

3. The refusal of defendants' offer.[3]

4–8. The answers to defendants' points.[4 to 8]

*Mr. D. T. Watson* (with him *Mr. S. A. McClung, Mr. Hill Burgwin, Mr. G. C. Burgwin* and *Mr. W. W. Wishart*), for the appellants:

1. There was no evidence that the defendants ever made or intended to make these bonds their own obligations, or that any of them, unless it be Mr. Marshall, ever authorized the sealing of them; and, even if it could be held that they were general partners, they cannot be held liable on sealed instruments issued for the firm, without proof that they authorized the seal to be affixed and thus adopted it as their own: Dubois's App., 38 Pa. 236; Schmertz v. Shreeve, 62 Pa. 460; Ash v. Guie, 97 Pa. 500. So far as appears, no business was done and no bonds were issued, until after October 1, 1879; and there is nothing in the fact that the acquisition of the legal title from Judge Mellon was delayed until then, to harm the plaintiff or render the defendants individually liable.

2. The plaintiff, as we offered to show, is one of the equitable owners of the property mortgaged to secure payment of his bonds. It was the property of the company mortgagor, whether that company was legally or illegally formed, and was sold to the plaintiff and others as such, subject to the mortgage. If he is allowed to recover in this suit, he will have the total debt and interest of his bonds, and also the realty, pledged as security for them; and, although he and the other bondholders bought the realty subject to the payment of these very bonds, and thus made the debt their own, they will, after compelling payment of the bonds, have the realty free. Such a monstrous result will not be tolerated in a court of justice: Dollar S. Bank v. Burns, 87 Pa. 491; Bryar's App., 111 Pa. 90. And ratification of the purchase made by Mr. Bailey was equivalent to prior authority to make it: Evans v. Mengel, 6 W. 72.

3. The seal on the bonds destroys their negotiability, and therefore plaintiff cannot sue in his own name: Frevall v. Fitch, 5 Wh. 325; Biery v. Haines, 5 Wh. 562; Corwin v. Railroad Co., 3 Houst. 288. The action being ex contractu, plaintiff cannot recover unless he has proved a joint liability of all the defendants: Biery v. Haines, 5 Wh. 562; Schoneman v. Fegley, 7 Pa. 433; Loew v. Stocker, 61 Pa. 347. However, there is no personal liability of any of the defendants exhibited in this case. The articles of association have substantially complied

with the law, which is sufficient: Pfirman v. Henkel, 1 Bradw. (Ill.) 145 ; Richardson v. Hogg, 38 Pa. 153 ; Andrews v. Schott, 10 Pa. 47 ; Vandike v. Rosskam, 67 Pa. 330 ; Smith v. Argall, 24 Wend. 496 ; Pierce v. Bryant, 5 Allen 91 ; Haviland v. Chase, 39 Barb. 283 ; VanIngen v. Whitman, 62 N. Y. 513 ; Madison Co. Bank v. Gould, 5 Hill 309 ; Argall v. Smith, 3 Den. 435 ; Levy v. Lock, 5 Daly 46. Even if the company did business before they were recorded, this would not render the defendants liable on bonds subsequently issued: Levy v. Lock, supra ; Lochornette v. Thomas, 5 Rob. (La.) 172; Pfirman v. Henkel, 1 Bradw. 145 ; Henkel v. Heyman, 91 Ill. 96 ; Lachaise v. Marks, 4 Smith, E. D., 610 ; Whitney v. Wyman, 101 U. S. 392.

*Mr. Lewis McMullen* and *Mr. M. A. Woodward* (with them *Mr. C. C. Dickey*), for the appellee :

1. The sealed instruments having been admittedly executed by the authority of all the defendants, an action can be maintained thereon against them, notwithstanding the authority was not given in writing. A writing under seal, executed by one partner for the use and benefit of the firm, may afterwards be ratified and adopted by parol, so as to become binding on the other partners: Bond v. Aitkin, 6 W. & S. 165 ; Fichthorn v. Boyer, 5 W. 159. Moreover, the seal may be disregarded as mere excess, and assumpsit maintained upon the instrument as if unsealed: Fagely v. Bellas, 17 Pa. 67 ; Jones v. Horner, 60 Pa. 214.

2. The articles of association do not comply with the law. No valuation is affixed to the four tracts of land described in schedule A, either as a whole or separately. The ten pieces of property described in schedule B, are lumped together in one valuation. The valuation of the two leases mentioned in schedule C, is included in a lumping estimate of all the property described in schedules A and C, which is not apportioned. Nor is there any description of the property covered by the second of the leases mentioned in schedule C, or anything by which the covenants and conditions of that lease can be ascertained.

3. If it were possible to add to the indefiniteness of these schedules, the defendants accomplished it by the further state-

ment respecting the existence of liens upon the properties contributed, which does not inform us what proportion of the value of the properties the liens amount to. The creditors are thus left in total ignorance as to the value of the contributions made by the defendants, and the amount of capital subscribed by each. At least one half of the properties described are in West Virginia, whose laws do not recognize such organizations. The act of May 1, 1876, P. L. 89, never intended that contributions to a limited partnership association should be made in such lands as these.

4. In order to save themselves from liability as general partners, it was necessary that the defendants comply strictly with the requirements of the statute : Vanhorn v. Corcoran, 127 Pa. 255 ; Maloney v. Bruce, 94 Pa. 249 ; Hill v. Stetler, 127 Pa. 145 ; Eliot v. Himrod, 108 Pa. 569 ; Sheble v. Strong, 128 Pa. 315. Again ; a false statement as to a material fact affecting the capital of the association, will render the subscribers liable as general partners: Hite N. Gas Co.'s App., 118 Pa. 436 ; Hill v. Stetler, 127 Pa. 145 ; and these articles falsely state that the ninth piece of land described in schedule B had been contributed, whereas they had no title to it for months afterward. The defendants' offer did not contain a single one of the elements which composed the case of Dollar S. Bank v. Burns, 87 Pa. 491. One of the plaintiffs could not buy in the land, and make himself a trustee for the plaintiff, and thus extinguish the debt.

5. The exhibits produced in connection with defendants' offer show that, if the property was held at all by Bailey, it was held merely to secure the debts of the bondholders, and that the plaintiff's interest is now, as it always has been, only a mortgage interest. On payment of his debt he will no longer have any interest in the land. The exhibits are relied on as evidence of ratification of Bailey's act, but it was not proposed to show that the plaintiff had knowledge of the terms of the purchase, or had ever accepted any declaration of trust. The exhibits do not show authority to make such a purchase as would wipe out the indebtedness. However, by that purchase Bailey took no title, both because he was a partner : Aultman's App., 98 Pa. 505, and because the supposed association for which the alleged liquidating trustees professed to act in the

sale, was never formed. Equity will not apply the doctrine of merger when against the interest of the party: Cook v. Brightly, 46 Pa. 444; Bryar's App., 111 Pa. 81; Pennock v. Eagles, 102 Pa. 290.

OPINION, MR. CHIEF JUSTICE PAXSON:

The Keystone Coal Company, Limited, was organized under the act of June 2, 1874, P. L. 271, and the several supplements thereto, as a limited partnership. The business of said association, as defined in the articles of association, "shall be the buying and selling of coal lands, mining, selling, and shipping of coal, and the manufacturing and selling and shipping of coke, and all other necessary incidents pertaining to the mining, manufacturing, selling, and shipping of coal and coke, and the carrying on and conducting of a general store at the mines of said association." The amount of capital was five hundred thousand dollars, and was contributed in the shape of coal lands and leases, etc. No capital appears to have been contributed in cash. Each tract of land so conveyed to the company appears to have been carefully described by metes and bounds, the portion contributed by each member valued, and the lands as a whole were valued at five hundred thousand dollars. In order to obtain money to carry on or extend its business, the company issued two hundred seventy-five thousand dollars of coupon bonds, secured by a mortgage upon its real estate. Soon after the company was organized it appears to have become insolvent. This suit was brought by the holder of a portion of the bonds referred to, against the defendants as general partners, his contention being that the association was not organized in accordance with the act of assembly. It is well settled that, if the members of a limited partnership seek to shelter themselves from personal liability behind the act of 1874, they must show a substantial compliance with its terms: Maloney v. Bruce, 94 Pa. 249; Hill v. Stetler, 127 Pa. 145.

The only two assignments of error which require comment are the third and the eighth. The third alleges that the court below erred in rejecting the evidence referred to therein. The offer is too voluminous to repeat here, but in substance it was an offer to show that, after the company had become insolvent, it appointed liquidating trustees for the purpose of closing

out and settling its affairs; that, in pursuance of an order of the Court of Common Pleas of Washington county, the mortgaged premises were sold subject to the lien of said mortgage by which the bonds were secured, including the bonds in suit; that, at said sale, the real estate was purchased for the bondholders, and is now held in trust for them; and that this arrangement was approved by said bondholders, including the plaintiff in this suit. It may be the defendants' offer was fully as broad as their means of proof, but for present purposes we must assume they could have made it good. It would then appear that the bondholders have purchased, through a trustee designated by them, the mortgaged premises subject to the lien of the mortgage. Having thus obtained the property, can they now proceed upon the bonds, and collect the amount thereof from the company, or from the defendants as individuals? If so, they will be twice paid; that is to say, they will have both the money and the land. That this cannot be done is plain, both upon reason and authority. Having purchased the property subject to the lien, the bonds became a part of the purchase money withheld at the time of the sale; in other words, they were a part of the bid: Carpenter v. Koons, 20 Pa. 222; Dollar S. Bank v. Burns, 87 Pa. 491. We are of opinion that it was error to reject this offer.

The eighth assignment alleges that the court below erred in refusing the defendants' sixth point. This point is as follows: " Under the records and evidence in this case, there was no personal liability on the part of the defendants as members of the Keystone Coal Co., Limited, to pay the bonds in suit."

This raises the question of the validity of the organization of the company. It does so, however, by indirection merely, as the court below was not asked squarely to rule upon the validity of the articles of association. No charge of the court below is given, beyond the answers to points and a peremptory instruction to find for the plaintiff. This instruction could not have been given if the association had been organized in conformity to the acts of assembly. This question lies directly in the way, and must be disposed of.

The act of June 2, 1874, P. L. 271, in regard to limited partnerships, provides for a cash capital. The supplement to said act, passed May 1, 1876, P. L. 89, allows the members " to

make contribution to the capital thereof in real or personal estate, mines or other property, at a valuation to be approved by all the members subscribing to the capital of such association: provided, that, in the statement required to be recorded by the first section of said act, subscriptions to the capital, whether in cash or in property, shall be certified in this respect according to the fact; and, when property has been contributed as part of the capital, a schedule containing the names of the parties so contributing, with a description and valuation of the property so contributed, shall be inserted." It will thus be seen that it is now lawful to contribute property as well as cash in the formation of a limited partnership. The only restriction upon this right is that the property contributed must be described, scheduled, and valued. The object of this, as was said in Maloney v. Bruce, 94 Pa. 249, "is to enable creditors to ascertain precisely of what the property consisted, and to judge of its value." The main point is the description. That should be sufficiently accurate to identify it. The valuation is a minor matter. The company can put it in at its own value, so that it be agreed upon. There is nothing in the act to restrict the amount of the valuation. If it is excessive, the creditor can decline to give the company credit; while, if the description is accurate, he can only be misled by his own want of prudence. But, if the description be so defective or inaccurate that the creditor may be misled, he has no means of forming an accurate judgment.

In the case in hand, the articles of association set forth the name of each member, his residence, and the amount of capital contributed by him. The articles then proceed to state that " the sum subscribed by each one of said parties is by the transfer to said association of real estate, coal property, coal rights and privileges, leases, etc., situate in the states of Pennsylvania and West Virginia, as set forth at length in schedules A, B, and C, and the interest of each of said parties is fully set forth in said schedules, which schedules are made a part of these articles of association." The schedules referred to contain a full description, by metes and bounds, of each piece of property contributed by each member, with a valuation thereof. The valuation is not of each tract as described, but the contribution of each is valued as a whole, and the contributions of all are

valued at the sum of five hundred thousand dollars, the amount of the capital. We see no objection to this. Where one member of a coal-mining company contributes as his share of the capital, say, two or more tracts of coal lands, the separate tracts constitute one entire tract, and a valuation as one tract does no violence to the act, and misleads no one; and being property of the same description, one acre may be fairly regarded as the equivalent of any other acre. The fact that the contributing member has acquired the title by different conveyances has no bearing upon their value, while their description as separate tracts is in the interest of creditors, as such description enables them to find and examine them the more readily. If, when examined, the creditor considers the valuation too high, he has the privilege, as before observed, of declining to give a credit upon such valuations.

It is to be observed that all the property described in the schedules is of a nature suitable for the use of the company, and germane to the business proposed to be carried on. It is true there was no cash capital provided by the articles of association, but this is not required by the act of assembly, and such fact appears upon the face of the papers. No one was or could have been misled by this. The association had the right to mortgage its property to raise money needed in its business, and if creditors gave credit where it was not deserved, such fact does not affect the validity of the organization.

It was alleged, however, that the articles contained a false statement, viz., that the ninth described piece of land in schedule B (called in the testimony the Mellon landing) had been contributed by the defendants; whereas, in fact, the defendants had no title to said land at the date of the execution of the articles of association. We do not understand the fact to be that the defendants had no title to the land at the time referred to. It is true they had not then the legal title, but they had the equitable title. The legal title was unexpectedly delayed by the loss of a deed by Mr. Mellon, the grantor, and by this accident the making of the full legal title was delayed. An equitable title is property in this state. The act of 1876 does not limit the property to be contributed to such as is held by a legal title, and we cannot amend the act. This remark applies equally to such property contributed as was encumbered

Opinion of the Court.

by liens.    That some of it was a mere equity of redemption could have misled no one, as it was so described in the articles. ·

The further objection was made that some of the lands lie in West Virginia, and it was urged that lands so situated could not be contributed as part of the capital.   The act of assembly does not say so.   It is true, if the property is so located as to be beyond the reach of creditors, we might be driven to hold that such property was not in the contemplation of the framers of the act.   But property in an adjoining state is not beyond the reach of creditors, and as it is fully described, the creditors must be presumed to have considered the inconvenience of resorting to it, when they gave the credit.

We need not notice the minor objections.   Upon the whole, we are of opinion that there has been a substantial compliance with the statutes in the formation of this company, and that the defendants are not liable as general partners.   It was never intended that these acts should be used as a trap to catch persons who have honestly complied with their substantial requisites, and impale them upon a meaningless technicality.   Where parties fail utterly to comply with their essential features, as in Maloney v. Bruce and Hill v. Stetler, supra, they must, of course, be held to the liability of general partners.   .

Judgment reversed.

—Seven other cases, to wit, Lilley, Foster, McKnight, McKnight's Admr., Morrow, McGowan, and Frisbee v. J. M. Bailey, et al., Nos. 20–26 October Term 1891, were ruled upon the foregoing case, and the judgments reversed.