10 BANK v. OSBORNE et al. SUPPLY CO.'S APPEAL.

Syllabus—Statement of Facts. [159 Pa.

# Butler Savings Bank v. Osborne et al. Oil Well Supply Co.'s Appeal.

[Marked to be reported.]

*Tenants in common—Partnership—Presumption.*

Tenants in common engaged in the improvement or development of the common property will be presumed, in the absence of proof of a contract of partnership, to hold the same relation to each other during such improvement or development as before it began. As to third persons, they may subject themselves to liability as partners by a course of dealing or by their acts and declarations, but as to each other their relation depends on their title until by their agreement with each other they change it.

*Tenants in common—Oil lease—Partnership.*

When tenants in common of an oil lease agree to carry on operations upon their land, each contributing towards the expenses in proportion to his respective interest in the land, they will be considered with respect both to themselves and third persons as the ordinary owners of land, working their respective shares of the wells, responsible only for their own acts, subject to no laws of partnership whatever, and possessing distinct rights in the property.

Two tenants in common of an oil lease entered into an agreement with each other to drill wells on the leasehold property, each to pay one half of the costs of sinking the well and pumping the oil. The oil produced was to be run into pipe lines serving the district, and there credited one half to each of the tenants in common. *Held*, that no partnership existed between the tenants in common.

Argued Oct. 19, 1893. Appeal, No. 272, Oct. T., 1893, by Oil Well Supply Co., an execution creditor, from order of C. P. Butler Co., Sept. T., 1892, No. 38, dismissing exceptions to report of auditor, distributing proceeds of sheriff's sale of property of D. Osborne et al. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to report of auditor distributing proceeds of sheriff sale of property of D. Osborne & Bros.

From the record it appeared that a writ of fi. fa. was issued on June 29, 1892, by the Butler County National Bank, and a second writ on June 30, 1892, by Collins & Heasley to sell the personal property of D. Osborne & Bros. These two writs were ordinary writs commanding the sheriff to levy the debts of the goods and chattels, lands and tenements of defendants.

On July 2, 1892, appellant, the Oil Well Supply Co., issued a special writ of fi. fa. under the act of April 8, 1873, P. L. 65, relating to execution against interest in partnerships. The writ commanded the sheriff to levy the sum of the judgment upon the interests of defendants of any personal, mixed or real property, rights, claims and credits in a partnership composed of defendants and John Carruthers and M. J. Peters.

From the evidence taken before P. W. Lowry, Esq., the auditor, it appeared that defendants and Carruthers & Peters were joint owners of an oil lease, which they operated at their joint expense, and divided the product.

The Oil Well Supply Co., the appellant, contended that the defendants in the executions were partners of Carruthers & Peters in the business of producing oil and gas upon the property sold; that all that was sold was the interest of the defendants in the partnership, and all that the purchasers got by the sale was the right to call upon Carruthers & Peters for an account, and that the special writ of the Oil Well Supply Co., having been issued before any levies had been taken upon the writs of the Butler County National Bank and Collins & Heasley, was entitled to be preferred to the two last mentioned writs, although they had been first issued. The auditor conceded the position taken by appellants, but held that the writs of the Butler County National Bank and Collins & Heasley were entitled to the first money, for the reason that the Osbornes and Carruthers & Peters, under the facts, were not partners in the business of producing oil or gas upon the properties so sold, but held them as joint tenants or tenants in common.

Exceptions by appellant to this finding and distribution were dismissed by the court in an opinion by GREER, J.

*Errors assigned* were dismissal of exceptions, quoting them.

*T. C. Campbell, James C. Boyle* and *A. T. Black* with him, for appellant.—An authority cannot be admitted in one partner to sell the entire property of the firm, when the object of the firm was not trade, buying and selling, but a business to which the continued ownership of the property sold is indispensable: Sloan v. Moore, 37 Pa. 217 ; McNair v. Wilcox, 121 Pa. 437.

12 BANK *v.* OSBORNE et al. SUPPLY CO.'S APPEAL.

Arguments. [159 Pa.

The special writ is entitled to the fund: Hare v. Com., 92 Pa. 141; Dengler's Ap., 125 Pa. 12.

Where the terms of the agreement and the facts are all admitted, whether or not a partnership exists is a question of law for the court: Morgan v. Farrel, 58 Conn. 413.

The relations between the parties operating oil or other mineral properties upon their joint expense has been held to be that of partners in the following cases : Babcock v. Stewart, 58 Pa. 179; Thomas v. Moore, 71 Pa. 193; Chamberlain v. Dow, 16 W. N. 532; Crow v. Green, 111 Pa. 637; Brown v. Beecher, 120 Pa. 590; Gates v. Watt, 127 Pa. 20; Kifer v. Smyers, 15 Atl. R. 904.

A division of products is not a feature of a partnership, but products mean gross returns without responsibility for losses, but profits mean net profits, that is, a right to share in the products, with a corresponding liability for losses : Brown v. Jacquett, 94 Pa. 113. This distinguishes this case from Walker v. Tupper, 152 Pa. 1.

Tenants in common or joint tenants of a mine or quarry may or may not be partners, and the mine or quarry itself may or may not be a part of common stock. But it is highly inconvenient, if not altogether impossible, for co-owners of a mine or quarry to work it themselves without becoming partners, at least in the net profits of the mine, and persons who work a mine or quarry in common are regarded rather as partners in trade than as mere tenants in common: Lindley, Part. 55; Bisph. Eq. § 524; Collier's Law on Mines, 88.

The rights and liabilities as to accounts exist as in other partnerships. Each member has a lien on the partnership property for the debts due the creditors thereof, and for money advanced by him for its use : 83 Am. Dec. 103, Freeman's note.

*Newton Black* and *W. H. Lusk,* for appellees.—There was no partnership existing between the firms: Story, Part. § 2; Edwards v. Tracy, 62 Pa. 374; Walker v. Tupper, 152 Pa. 1.

No presumption of partnership arises from the fact that tenants in common jointly develop the common property : Grubb's Ap., 66 Pa. 374; Bouvier's Institute of American Law, ed. of 1872, §§ 1437, 1440, 1452.

So far as execution creditors are concerned the language of

BANK *v.* OSBORNE et al.  SUPPLY CO.'S APPEAL.  13

1893.]                Arguments—Opinion of the Court.

the recorded titles is to govern, and parol proof is inadmissible to show that the property is held as partnership property: Warriner v. Mitchell, 128 Pa. 153.

OPINION BY MR. JUSTICE WILLIAMS, December 30, 1893:

The question raised on this record grows out of the following facts: The firm of D. Osborne & Brothers was engaged in drilling oil wells and producing oil.  It was an owner of some leases on which it was operating, and a part owner as a tenant in common with other part owners in others.  In the same district the firm of Carruthers & Peters was engaged in the same business, and in the same manner.  Each of these firms bought an undivided one half of two leases, known respectively as the Cookman lease and the Duncan lease.  Both leases were obtained from the same vendor, who was engaged in drilling a well upon one of them at the time of sale.  The sale included the drilling tools and machinery in actual use, and it was agreed that Duncan, their vendor, should proceed to complete the work of drilling he had begun.  When this was done the two firms proceeded to prepare the well for pumping, each paying one half of the expenses incurred.  As soon as the first well was put in order, the owners entered into an agreement with each other to drill another well on the same lease, and to pay their one half part of the cost of it.  They divided the expenses incurred in pumping, and in the care of the leases, in the same manner, each paying one half.  The oil produced was run into pipe lines serving the district, and there credited one half to Osborne & Brothers, and one half to Carruthers & Peters. Upon these facts the appellant contends that the tenants in common of the Cookman and Duncan leases became partners. It is not alleged that any contract of partnership was ever entered into between the two firms, or that any new partnership name was adopted to represent them in their operations upon these leases.  Their relation toward each other, as the result of their purchase of their respective interests in the leases, was that of tenants in common.  They were engaged in the development and operation of the common property for their individual benefit.  They were doing what tenants in common may properly do, and in the only way practicable for them, viz.: turning the common property to the profit of its

14  BANK *v.* OSBORNE et al.  SUPPLY CO.'S APPEAL.

Opinion of the Court.                    [159 Pa.

owners, at their individual cost, and dividing the product be-
tween themselves in the pipe lines in shares corresponding with
their interest in the title.   The firm of D. Osborne & Bros. seems
to have been badly in debt.   The Butler Savings Bank was
among its creditors, and was the holder of two judgments against
the firm and the individuals composing it, on which writs of
fieri facias were issued on 29th of June, 1892.   The appellant
was also a creditor having one or more judgments entered
against the firm.   On the 2d of July, 1892, it caused a special
writ of fi. fa. to be issued, directing the sheriff to levy on the
interest of D. Osborne & Bros. in an alleged partnership com-
posed of the firms of D. Osborne & Bros. and Carruthers &
Peters.   The sheriff seized and sold at the instance of the bank
the title of Osborne & Bros. in both leases.   At the instance
of the appellant he seized and sold the interest of Osborne &
Bros. in the alleged new firm.

Whether the appellant is entitled to come in on the fund
raised by the sheriff by means of a sale made upon all the writs
in his hands, depends on whether the alleged partnership be-
tween the tenants in common had any existence.   If it did,
the two leases were partnership property belonging to that
partnership.   The interest of Osborne & Bros. would in that
case go to the purchaser at sheriff's sale subject to a settlement
of the partnership business, and would be simply a right to re-
ceive one half of what might remain after that business was
closed up; and the proceeds of such sale would go to the special
writ of fi. fa.   If on the other hand no such partnership existed,
then the title of D. Osborne & Bros. was that of a tenant in
common owning one half of the leases; the purchaser at sher-
iff's sale would succeed to their title; and the money raised
would go to the bank as the proceeds of the sale of the property
of its debtor.   In the case of Dunham v. Loverock, 158 Pa. 197,
we have held at the present term that tenants in common en-
gaged in the improvement or development of the common prop-
erty will be presumed, in the absence of proof of a contract of
partnership, to hold the same relation to each other during
such improvement or development as before it began.

As to third persons, they may subject themselves to liability
as partners by a course of dealing or by their acts and declara-
tions, but as to each other their relation depends on their title,
until, by their agreement with each other, they change it.

BANK *v.* OSBORNE et al. SUPPLY CO.'S APPEAL. 15

1893.]                    Opinion of the Court.

The act of April 25, 1850, gives the courts jurisdiction in equity over the settlement of accounts between tenants in common of mines and minerals, and empowers them to " cause to be ascertained the quantity and value of the coal, iron ore or other minerals, so taken respectively by the respective parties, and the sum that may be justly and equitably due by, and from, and to, them respectively therefor, according to the respective proportions and interests to which they may be respectively entitled in the lands."

This power over the accounts between tenants in common was exercised by the courts of equity in England long before our statute was passed ; and as between the tenants in common and third parties the same controversy frequently arose that exists in this case. The effort of third parties, extending credit to them, was to hold them liable as partners, just as the appellant seeks to do here. But the rule in England, as I understand it to be, is that, when tenants in common agree to carry on mining operations upon their land, each contributing towards the expenses in proportion to his or her respective interest or estate in the land, they will be considered with respect both to themselves and third persons as the ordinary owners of land working their respective shares of the mines, responsible only for their own acts, subject to no laws of partnership whatever, and possessing distinct rights in the property : Bainbridge on Mines and Minerals, ch. 9, p. 296. The several owners may form a partnership for the purpose of operating the common property if they so agree, but, in the absence of an agreement, they will be presumed to deal with each other and the common property, as part owners, holding as tenants in common, and liable to each other in account render or in equity, as the circumstances may seem to require.

In the case now before us there is no need to rely on the presumption, as the auditor has found as a fact that no partnership existed between the two firms owning the Cookman and Duncan leases. From this finding of fact the auditor correctly concluded, as a matter of law, that the special writ of fieri facias, issued by the appellant against the interest of D. Osborne & Bros. in the alleged partnership, had nothing on which it could be executed.

The contention of the appellant fails therefore on both

16  BANK *v.* OSBORNE et al.  SUPPLY CO.'S APPEAL.

Opinion of the Court.                              [159 Pa.

grounds.  The law does not imply a partnership between tenants in common because of the fact that they agree to develop or operate the common property, since they may rightfully do this by virtue of their respective titles as part owners.  And next, the existence of an express agreement creating a partnership is negatived by the finding of the auditor, concurred in by the court below.  As it is thus settled that the alleged partnership did not exist, the conclusion is inevitable that the sale on the writ in favor of the bank passed the title of D. Osborne & Bros. in the two leases to the sheriff's vendee, who thereupon became a tenant in common with the other part owner.

The proceeds of the sale were therefore properly distributed in the court below and the decree of distribution is affirmed.