## Cook v. Coulter & Co.

Before Brownson, P. J., and Cummins, J.

*Bloom & Bloom,* for plaintiff.

*John C. Sheriff* and *Marriner, Wiley & Wiley,* for defendant.

BROWNSON, P. J., April 30, 1928.—D. J. Coulter, having acquired three leaseholds for oil and gas purposes (one of which was known as the Hudson Tucker lease), sold and assigned undivided "working interests" therein to a number of persons, who are named in the insurance policy below mentioned, among them A. J. Cook, the interest assigned to him being an undivided one-sixteenth. These assignments were made subject to certain "stipulations, covenants and agreements," which may be summarized as follows: (1) The party of the first part (the assignor, Coulter) agreed to drill a well on the Hudson Tucker lease; (2) the party of the second part agreed to pay to party of the first part a specified sum as "his proportionate share of the cost of drilling the above well;" (3) if oil or gas should be found, and party of first part should decide to operate said well, party of the second part agreed to pay a proportionate share of the casing, tubing and other equipment; (4) if oil or gas should not be found in said well, and party of first part should elect to drill another well, party of second part should pay to him a proportionate share of the cost of drilling it, and a like share of the cost of equipping it for operation should oil or gas be found therein in paying quantities; (5) default in making the payments aforesaid should cause a forfeiture of the interest assigned; and (6) if party of second part should refuse to join in further drilling which party of first part might elect to do after the obtaining of production in paying quantites, the former should forfeit all interest, except in any producing wells at that time existing, with a protecting area adjoining them.

A well was drilled on the Hudson Tucker lease, which produced gas in paying quantities, and this well was equipped and operated. Its operation was in the control of D. J. Coulter. A. J. Cook, the decedent, worked at this well in connection with its operation, and was paid a *per diem* compensation for so doing. On Dec. 29, 1924, while working at the bailing out of the well, Cook met with an accident, which resulted in his death. These proceedings were instituted by a petition of his widow, filed April 17, 1925, to obtain an

award of compensation for his death, the petition averring that he was employed by "D. J. Coulter & Co.," without saying of whom D. J. Coulter & Co. consisted.

The Fidelity and Casualty Company of New York had, on or about June 11, 1924, issued a workmen's compensation policy of insurance to "D. J. Coulter, Raymond Coulter, John Duncan, John Panconi, Charlie Bloom, H. G. Klink, Mr. Wickensson, Sam Broida, A. J. Cook, Mabel Coulter, H. H. McKinney, Jesse Ramsey, Frank Farulli, trading as D. J. Coulter & Co.," and after these proceedings were commenced, the insurance company intervened and filed on behalf of D. J. Coulter & Co. an answer, in which liability was denied, for the reason that the deceased, A. J. Cook, "was a partner in the partnership of D. J. Coulter Company."

The referee found, *inter alia*, that D. J. Coulter assigned undivided one-sixteenth interests in the leases to twelve other persons, retaining the balance (stating briefly the terms of the assignments); that A. J. Cook had a one-sixteenth interest, one-half of which he sold to his son; that "this association [which may perhaps be intended to mean an association composed of D. J. Coulter, A. J. Cook and the other holders of interest] was known as D. J. Coulter & Company;" that "D. J. Coulter had sole control and management of all things pertaining to the operations for oil and gas upon these leases;" that A. J. Cook "was employed by D. J. Coulter & Company, defendant," and was an employee of D. J. Coulter & Company within the meaning of the Workmen's Compensation Act. An award of compensation was made by the referee against both "D. J. Coulter & Co." and the Fidelity and Casualty Company of New York.

As above indicated, the referee's findings may probably be supposed to mean that the organization, in and about whose business Cook was working at the time of the injury which caused his death, was a partnership or association composed of himself and other persons; but the referee did not make a distinct and unequivocal finding on this point; and on the appeal from the referee to the board, the insurance company asked for a determination of "the question whether D. J. Coulter & Company is or is not a copartnership of which A. J. Cook was a copartner." This request was made for the reason that the insurance company's position was, and from the time when it first came into the case had been, that it is not liable for any compensation for the death of A. J. Cook, because *(a)* the Workmen's Compensation Act does not apply to a partner who does work in the business of the partnership, as the same person cannot be both employer and employee, at the same time, within the meaning of the act; and *(b)* this company, by the terms of the policy which it issued, insured only the liability of A. J. Cook and others, trading as D. J. Coulter & Co., to such employees (other than themselves) as might become entitled, against them, to compensation under the statute. On the other hand, the appellee has, in the brief presented to the court, argued, in substance, that, according to the effect of the evidence, D. J. Coulter & Co. was not a partnership; that the owners of the interests in the leases were tenants in common who had left their interests in the control of D. J. Coulter for operation, subject to his duty to render to them a share of the proceeds; and that the business of operating the leases was the individual business of D. J. Coulter, carried on by him individually under the name of D. J. Coulter & Co. as a matter of convenience to distinguish it from other operations in which he was engaged, and, hence, there was nothing to prevent Cook's working as Coulter's employee, notwithstanding the ownership of an interest in the leases. (In connection with this argument, the cases of Walker *v.* Tupper, 152 Pa. 1, and Butler Savings Bank *v.* Osborne, 159 Pa. 10, may be consulted.)

The opinion of the board dismissed the request for a definite finding in these words: "There being competent evidence that Cook was an employee of Coulter & Company, the referee was not obliged to extend his findings to include a definition or entitlement of the master's business, whether a corporation, a copartnership, joint stock association, tenancy in common, tenancy by entireties or other association. If this be true, it is not incumbent upon the board to define the precise legal status of defendant or to remit the record to the referee for an amended finding on this subject."

We do not take the same view of the matter. We think it is necessary, in order to determine whether the conclusions of law reached are correct, to have distinct and definite findings of fact exhibiting the relation of A. J. Cook to the business in which he was working. This is necessary because, in order to dispose of the case entirely, we have to determine not only whether compensation for the death of Cook is within, or outside of, the liability which the insurance carrier was paid for assuming, and by the provisions of the policy actually did assume, but also whether D. J. Coulter & Co.—whoever or whatever they may be—are liable to an award for such compensation; and to decide whether the award shall stand against both parties as made, or be set aside as to both, or shall stand as to one and be set aside as to the other. If the fact be that A. J. Cook and other individuals, associated together as a partnership, or quasi-partnership, or other organization (not a corporation), were the proprietors of the business, and D. J. Coulter was managing it as their agent or superintendent, so that A. J. Cook was working for himself and others, then, according to the interpretation which was given to the English Workmen's Compensation Act in Ellis v. Ellis, 7 Workmen's Compensation Cases, 97, and was adopted and applied to our act in Speck v. Omwake & Speck, 8 Dept. Reps. 482, and Arthurs v. Drilling Co., Claim Petition No. 12,451, not reported, there would seem to be no liability at all under the Workmen's Compensation Act, because the statute defines an employee as embracing "persons who perform services for another for a valuable consideration," and does not intend to create "the personality that is unknown to the law, a person who at one and the same time is both master and servant, employer and workman;" and when, by arrangement between partners, one of them works for the partnership and is allowed for so doing what are called "wages," this is in reality nothing more than a mode of adjusting accounts between the partners and does not create the relation of employer and employee within the meaning of the statute. But if the fact be, as contended here by the appellee, that "D. J. Coulter & Co." means, and is, merely D. J. Coulter doing business under that name, and the operation of the leases was his individual business, carried on in a character substantially that of a contractor (or analogous thereto), so far as concerning the interests in the property of his co-tenants, so that Cook was his employee, then the insurance company may not be liable, because it did not insure the liability of D. J. Coulter as an individual employer; but D. J. Coulter himself, doing business under the name of D. J. Coulter & Co., may be so.

As we are not authorized to find the facts ourselves from the evidence, we think the case should go back, to the end that the facts may be fully, distinctly and unequivocally found with reference to the following questions:

1. Whether, at the time of receiving his injury, A. J. Cook was performing services for himself and other persons associated together as a partnership under the name of D. J. Coulter & Co.;

2. Whether, at that time, he was performing services for himself and other persons, associated together in any form of organization or relation

other than a partnership, and if so, the nature of such organization or relation; and

3. Whether, at the time aforesaid, he was performing services for and as an employee of D. J. Coulter, individually trading under the name of D. J. Coulter & Co., in a business of which D. J. Coulter alone was the proprietor.

And if, in order to determine these questions, additional evidence is required, a hearing de novo should be granted.

And now, April 30, 1928, the court being of opinion that the findings of fact by the referee and the board are not sufficient to enable it to decide all the questions of law raised by the appeal, it is ordered that the record be remitted to the Workmen's Compensation Board, to the end, and with the direction, that it shall make or cause to be made more specific findings of fact touching the questions that are stated in the opinion herewith filed.

From Harry D. Hamilton, Washington, Pa.