Fairman Bros. to Use, Appellants, *v.* Ogden Gas Co.

Argued April 13, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Edward Friedman,* and with him *Charles J. Margiotti, W. M. Gillespie, S. C. Pugliese* and *Samuel Wilson,* for appellant.

*George F. Whitmer,* and with him *A. A. Geary,* for appellee.

OPINION BY KELLER, J., July 14, 1932:

After full consideration of the evidence taken on the rule to open the above judgment, we are of opinion that the parties composing the Ogden Gas Company were not operating the oil and gas lease as tenants in common but as a joint stock company, and as they had not complied with the provisions of the Act of June 2, 1874, P. L. 271, limiting the liability of the subscribers or contributors for the debts of such association to the capital subscribed, or the acts relating to limited partnerships, (April 12, 1917, P. L. 55), or registered limited liability partnerships (May 9, 1899, P. L. 261), that they were liable for such debts as partners: Cock v. Bailey, 146 Pa. 328, 338; Gearing v. Carroll, 151 Pa. 79, 84; Hill v. Stetler, 127 Pa. 145; Maloney v.

Brace, 94 Pa. 249; Chatham Nat. Bank v. Gardner, 31 Pa. Superior Ct. 135, 137. It may be that on the trial of the issue in court other evidence may be introduced that will support a different conclusion, but as now presented our judgment is as above stated.

. The circumstances, as shown by the evidence before us, are wholly unlike the facts developed in Dunham v. Loverock, 158 Pa. 197; Butler Savings Bank v. Osborne, 159 Pa. 10, and the other cases relied on by the appellee, which are based on the decisions in those two cases. For example, in Dunham v. Loverock, Loverock was the owner of an undivided half part of a leasehold estate in ten acres of land and of the oil well, fixtures and machinery on said leasehold. On January 16, 1889, Dunham purchased the other undivided half part of the same leasehold and of the well and other property thereon from a former owner. The leasehold was thereafter operated for the common benefit of its owners; *and the production divided equally between them in the hands of the pipe line company that transported and stored the oil.* Each took his own share of the oil and paid his share of the current expenses of production. The difference between such an arrangement by tenants in common and a partnership is well expressed in the opinion of the Supreme Court (Mr. Justice WILLIAMS) on pp. 202 and 203. In Butler Savings Bank v. Osborne, the arrangement was much the same. D. Osborne & Brothers and Carruthers & Peters were two firms each of which was engaged in drilling oil wells and producing oil. Each of these firms bought an undivided one-half of two leases, known as the Cookman lease and the Duncan lease, from the same vendor, who was drilling a well on one of them at the time of sale. The sale included the drilling tools and machinery in actual use, and it was agreed that the vendor should complete the work of drilling the well. When this was done the two firms proceeded to prepare the well for pumping, each pay-

ing one-half of the expenses incurred. When the first well was completed they entered into an agreement with each other to drill another well on the same lease, each to pay its one-half of the cost. They divided the expenses incurred in pumping, and in the care of the leases, in the same manner, each paying one-half. *The oil produced was run into pipe lines serving the district, and there credited one-half to Osborne & Brothers, and one-half to Carruthers & Peters.* No contract of partnership was ever entered into between the two firms and no "new partnership name was adopted to represent them in their operations upon these leases."

In the present case, B. M. Ogden in August, 1916, was the owner of the oil and gas lease of fifty acres in question. By his efforts an association was formed to operate the lease, and the name "Ogden Gas Company" was adopted to represent the parties in their operations on this lease. *No conveyance or assignment of this lease was made to any one* (p. 61-a), but Ogden continued to hold it, for the benefit of those contributing to its operation, and shares or interests, similar to certificates of stock, were issued to the parties interested, in the following form:

"No. 7          Ogden Gas Company          6 shares.

This certifies that M. C. McClune is the owner of six shares, fully paid up, in the Ogden Brothers lease, situate in Limestone Township, Clarion County, Pennsylvania, consisting of fifty acres more or less, transferable only on the books of this company in person or by duly authorized attorney upon surrender of this certificate properly endorsed. Each share is 1/64 of the total valuation of the said lease.

In witness whereof the said company has caused this certificate to be signed by its duly authorized officers this 12th day of November, A. D. 1917.

                    Robert C. Burnham, President.
Benj. M. Ogden, Secretary-Treas.'"

The shareholders held meetings, of which minutes were kept, elected officers,—a president, secretary and treasurer—who looked after the operation. The business was operated as an association, not by the shareholders as individuals. Wells were drilled and the expenses of drilling, etc., paid not by the respective shareholders to the creditors or those doing the work, but to the treasurer who paid the bills and settled the accounts. The product from the wells was not credited to the accounts of the respective shareholders but sold by the officers and the money paid to the treasurer, who made distribution from time to time to the holders of the certificates of shares as they appeared at the time on the company's records, and established a reserve fund in bank to the credit of the association. The rights of a shareholder passed by endorsement and delivery of the certificate, and the new holder thereupon succeeded to all the rights of the former owner in any dividends or distribution accruing thereafter. The holder of a share was entitled to 1/64 of the gains and liable for 1/64 of the losses accruing from the operations. Two wells had been drilled early in the operation. Fairman Bros. were employed by the president, Robert C. Burnham, and the secretary-treasurer, B. M. Ogden, to drill a third well. The drilling of this well was done with the consent and approval of the shareholders. The amount of the judgment note in question represents the balance alleged to be due for the work of drilling this third well.

It is apparent that the manner of conducting this business bore no likeness to the method of operating the oil leases and wells described in Dunham v. Loverock, supra, and Butler Savings Bank v. Osborne, supra, but, on the contrary, differed in no material particular from the conduct of a joint stock association. Much of the evidence taken on the hearing was not relevant. If the officers of the association had

authority to employ Fairman Bros. to drill the third well, they had authority to pay them for the work, and to give an ordinary note or obligation, binding the association, for any unpaid balance due them; and the state of accounts between the various members of the association was of no concern to Fairman Bros. In such event, the important matter would be what occurred when the work was authorized and performed, not when the note in settlement of the balance due was given.

But it does not follow that because the treasurer could have given Fairman Bros. the simple note or obligation of the Ogden Gas Company for the balance due them for drilling well No. 3, that he had authority to give them a note authorizing a confession of judgment.

Prior to the enactment of the Uniform Partnership Act of 1915 (March 26, 1915, P. L. 18), the law of this state was that, without the consent of his copartners, one partner could confess a judgment for a partnership debt, which could be enforced by execution against the partnership property, as well as the individual property of the partner confessing judgment, but which was without effect as to the separate estates of the partners not joining in the confession: Boyd v. Thompson, 153 Pa. 78; Evans v. Watts, 192 Pa. 112, 115; Walsh v. Kirby, 228 Pa. 194, 196; Funk v. Young, 241 Pa. 72, 75. But this was changed by the Uniform Partnership Act, supra, which, in section 9 (3) provides: "Unless authorized by the other partners, or unless they have abandoned the business, one or more but less than all the partners have no authority to ...... confess a judgment." While this may have been declaratory of the law in other jurisdictions it effected a radical change in Pennsylvania. Our decisions since the effective date of the Uniform Partnership Act, which restate the law in this respect as it was prior to the Uniform Partnership Act (Van

Scoten v. Botsford & Kunes, 98 Pa. Superior Ct. 270; Lycoming Trust Co. v. Allen, 102 Pa. Superior Ct. 184), did not give due regard to the change made by that act.

While we are of opinion that the evidence in the case required a finding that the business of Ogden Gas Company was not conducted by the parties interested as tenants in common, but as a joint stock association, equivalent, in legal effect, as respects third persons, in the circumstances here present, to a partnership, yet it does not appear sufficiently clearly that the other partners authorized B. M. Ogden, as treasurer or as a partner, to confess the judgment in favor of Fairman Bros. for the balance alleged to be due them for drilling the third well, and consequently the lower court committed no error in opening the judgment and letting the Ogden Gas Company into a defense. This, of course, does not affect the validity of the judgment entered against B. M. Ogden individually.

The assignment of error is overruled, and the order of the court below opening the judgment as to the defendant, Ogden Gas Company, is affirmed.